# JOHN W. RICHMOND

*v.*

## VIRGINIA ROBERTS.

*Filed at Springfield March 21, 1881.*

1. JUROR—*competency.* A juror was asked, in a case involving a breach of promise of marriage, by the defendant, "the law being, to entitle the plaintiff to recover, she must prove her case by a preponderance of the evidence, now in case the evidence should be evenly balanced, how would you be inclined to find,—for the plaintiff or defendant?" and he answered, "that in that case, he would feel inclined to find for the plaintiff." On further examination he said he had not formed or expressed any opinion,—that he had no bias or prejudice for or against either of the parties, and knew no reason why he could not sit as an impartial juror and decide the case according to the evidence: *Held,* on challenge for cause, that the juror was competent.

2. ·PROMISE TO MARRY—*evidence to prove.* In a suit for a breach of promise of marriage all the facts and circumstances existing between the parties prior to, or after the time of the alleged marriage contract, when it is denied ever to have existed, tending to establish an engagement, is proper evidence for the consideration of the jury.

3. So where the plaintiff testified that the defendant commenced paying his attentions to her as a suitor in the fall of 1873, and during that fall gave her a newspaper· article entitled, "Love, the Conqueror," marked in his own handwriting, "read this," this article, the subject of which was such as would be suggested by the title, together with a number of his letters to her prior to the time she claimed the engagement to have been made, the defendant denying there ever was any engagement, was held properly admitted in evidence.

4. SAME—*withdrawal of defendant's affections, no mitigation of damages.* The fact that a defendant, before suit, withdrew his affections from the plaintiff, whom he was engaged to marry, without cause given by the plaintiff, and refused to marry her, will not mitigate or lessen the damages in the case.

5. INSTRUCTION—*as confining belief of the jury to the evidence.* Where an instruction commences by saying, if the jury believe, from the evidence, which is soon after repeated, and the latter part concludes with, "the court further instructs the jury, that if, when the evidence in the case heard by them," etc., "they believe," etc., it will not be held that the jury were misled, and came to a conclusion without its being founded on the evidence.

6. DAMAGES—*instruction as ignoring the pecuniary circumstances of the defendant.* An instruction for the plaintiff, in an action for a breach of a promise

of marriage, which tells the jury that they may "take into consideration all the facts and circumstances proven by the evidence," and that "to them is committed the exclusive task of examining the facts and circumstances as shown by the evidence, and of awarding the compensation, if any, which the plaintiff shall recover," is not obnoxious to the objection that it ignores the evidence in the case of the defendant's pecuniary circumstances.

7. INSTRUCTIONS—*no error in refusing to repeat principles.* When the substance of all that is contained in refused instructions has been given in others, there is no error in refusing them. A repetition of the same principle in two or more instructions tends to swell the record unnecessarily, and is a practice not to be encouraged.

8. SAME—*not proper as to the effect of evidence.* In an action for a breach of promise of marriage, the court refused an instruction asked by the defendant, that in making up their verdict, they should not take into consideration the grammatical construction of the letters written by defendant to plaintiff, nor allow the peculiarity of the spelling therein to influence their decision: *Held,* properly refused as invading the province of the jury to pass upon the weight and effect of the evidence.

9. DAMAGES—*measure in breach of promise of marriage.* The damages to be allowed for a breach of a promise of marriage is a question peculiarly within the province of a jury, and courts are very unwilling to set aside a verdict in such a case on the ground of excessive damages. To justify the court in so doing it must believe the verdict was perverse, or the result of gross error, misconception or undue motives.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding.

This was an action instituted in the circuit court by Virginia Roberts against John W. Richmond to recover upon the breach of an alleged promise of marriage. The plaintiff claimed that the actual engagement to marry, between herself and Richmond, was made about the month of August, 1874. Prior to that time, and for several years, they had corresponded, and upon one occasion Richmond sent to plaintiff a newspaper article, with the title, "Love, the Conqueror." The subject of the article was such as would be suggested by the title. The letters written by him were many of them

written while he was traveling abroad, and gave descriptions of what he saw, and were all of a very friendly character. Objection was made on the trial, by the defendant, to the admission of the newspaper article in evidence, or the letters written by him prior to the time of the alleged engagement,— but the court permitted them to be read in evidence. This ruling is one of the grounds of error alleged. Other facts necessary to an understanding of the case, are presented in the opinion.

Mr. C. A. ROBERTS, and Mr. L. W. JAMES, for the appellant:

1. The court erred in not allowing the challenge to the juror, John Pawson. That he was incompetent, see *Chicago and Alton R. R. Co.* v. *Adler,* 56 Ill. 347; *Galena and Southern Wisconsin R. R. Co.* v. *Haslam et al.* 73 id. 495.

2. The court erred in permitting the newspaper article entitled, "Love, the Conqueror," to be read to the jury. The delivery of this article was in the fall of 1873, long prior to any pretended engagement to marry. The same may be said of the defendant's letters from 1 to 14 inclusive, they being all prior to the assumed engagement.

3. The plaintiff failed to establish, by a fair preponderance of the evidence, a promise to marry and an acceptance.

Messrs. COHRS & GREEN, and Mr. B. S. PRETTYMAN, for the appellee:

In cases of this kind the jury are the sole judges of the amount that shall be awarded as damages. *Douglas* v. *Gausman,* 68 Ill. 170.

A promise, request or refusal to marry may be proved by circumstances as well as by positive proof. *Prescott* v. *Guyler,* 32 Ill. 312; *Greenup* v. *Stoker,* 3 Gilm. 202.

That letters written before an engagement to marry may be read in evidence, can not be questioned. *Prescott* v. *Guyler,* 32 Ill. 312; *Rockafellow* v. *Newcomb,* 57 id. 186.

To set aside the verdict on the ground of excessive damages, it must appear that the jury misunderstood the evidence, or were governed by passion or prejudice. *Blackburn* v. *Mauer,* 85 Ill. 222; *Fidler* v. *McKinley,* 21 id. 308; *Douglas* v. *Gausman,* 68 id. 170; *Sulzer* v. *Yott,* 57 id. 166.

Where a juror is examined and excused peremptorily, this will obviate any error in not allowing a challenge for cause. *Amick* v. *Young,* 69 Ill. 542; *Wilson* v. *The People,* 94 id. 299.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action, brought by Virginia Roberts, in the circuit court of Tazewell county, against J. W. Richmond, for a breach of promise of marriage. On a trial of the cause before a jury plaintiff recovered a verdict and judgment for $4000, which, on appeal to the Appellate Court, was affirmed. To reverse the judgment of the Appellate Court the defendant appealed to this court.

In the selection of a jury to try the cause, John Pawson was called as a juror, and, after being examined and accepted by the plaintiff, the defendant's counsel asked him this question: "The law being that to entitle the plaintiff to recover, she must prove her case by a preponderance of the evidence, now, in case the evidence should be evenly balanced, how would you be inclined to find,—for the plaintiff or defendant?" The juror answered: "That in that case, he would feel inclined to find for the plaintiff." The defendant then challenged the juror for cause.

The juror, upon further interrogation, said: He had not formed or expressed any opinion; that he had no bias or prejudice for or against either of the parties, and knew no reason why he could not sit as an impartial juror and decide the case according to the evidence.

The court refused the challenge, and defendant excepted. The juror was then challenged peremptorily by defendant.

It is contended by defendant that the court erred in disallowing the challenge, and, in support of this view, *Chicago and Alton Railroad Co.* v. *Adler*, 56 Ill. 347, is cited and relied upon. What was there said might seem to sustain the position of counsel here, but the juror went further in this case than did the juror in the case cited. Here, he says he had no bias or prejudice for or against either party, and knew of no reason why he could not sit as an impartial juror and decide the case according to the evidence. If a juror has neither formed nor expressed an opinion, and has no prejudice or bias against either of the parties for any cause whatever, and can sit impartially and decide the issue involved in the case according to the evidence, we are of opinion such a person is a competent juror.

On the trial of the cause, the plaintiff testified that defendant commenced paying his attentions to her as a suitor in the fall of 1873; that during that fall defendant gave her a newspaper containing an article entitled "Love, the Conqueror." This article was marked, in defendant's own handwriting, "read this." The newspaper article, so marked, was read in evidence to the jury. Thirty-one letters, written by the defendant to the plaintiff, were also read in evidence. The letters from one to fourteen inclusive, written prior to May 15, 1874, and the newspaper article, defendant contends, were incompetent evidence, and that the court erred in permitting them to be read to the jury.

It is true, the plaintiff does not claim an actual engagement existed between herself and defendant prior to August, 1874, but the defendant denied the existence of a promise to marry in August, 1874, or at any other time. Under such circumstances, all the facts and circumstances existing between the parties prior to or after the time when the alleged marriage contract was entered into, tending to establish an engagement, must be regarded as proper evidence for the consideration of the jury. The law did not require the plaintiff to prove the contract of marriage by witnesses present when it was entered

into.  Such contracts are usually made in secret, in the absence of witnesses, when none but the two contracting parties are present.

The letters of the defendant containing his professions of love for the plaintiff, the article, "Love, the Conqueror," given by the defendant to the plaintiff, with a request in his own handwriting that she should read it, were all competent evidence.  The article may be regarded as the defendant's own letter; it doubtless contained sentiments which he sanctioned, couched in language more choice than he could compose.  It was his appeal for marriage,—it foretold in clear and emphatic language his object and intent in his courtship with her.  She doubtless placed this construction upon it, as she well might do, and laid it aside as a rare treasure with his other letters.  The letters and the article in the newspaper were, in our judgment, competent evidence for the consideration of the jury, in connection with the conduct of defendant and the other proof, as tending to prove a mutual engagement between the plaintiff and the defendant.

It is next urged that the court erred in giving plaintiff's instructions eight and nine, and in refusing instructions nine, ten, eleven and twelve asked by defendant.  Number eight, complained of, in substance directed the jury that if they found from the evidence defendant withdrew his affections from plaintiff and refused to marry her, such withdrawal on his part is no defence to the action and affords no justification to the defendant for such refusal to marry the plaintiff, if proven, and does not mitigate or lessen the damages to which plaintiff would be entitled for such breach of promise.

The last clause of the instruction defendant thinks was calculated to mislead the jury.  We perceive nothing in the language used calculated to mislead the jury.  If the defendant withdrew his affections from the plaintiff without cause given by plaintiff, and refused to marry her, such withdrawal could not mitigate or lessen the damages.  All the circum-

stances under which defendant withdrew his affections and refused to marry the plaintiff were before the jury, and nothing in the instruction prevented the jury from giving due consideration to all those circumstances.

The objection made to the ninth instruction is, that while the instruction undertakes to state to the jury what may be taken into consideration by them in estimating the damages, it ignores the fact of defendant's pecuniary condition, and does not confine the belief of the jury, as to amount of recovery, to the evidence.

The instruction commences in the first line by saying, "if they believe from the evidence;" this is repeated in the third line. In the latter part of the instruction we find this language: "the court instructs the jury that if when the evidence in the case heard by them, etc. * * * they believe," etc.

By the instruction the attention of the jury was so often called to the fact that they must believe from the evidence, that we perceive no room for holding that they could have been misled, and come to a conclusion without it was founded on the evidence. As to the other objection, we think it too was unfounded. The pecuniary condition of the defendant was proven before the jury. With this evidence before them, the last sentence of the instruction declared, "that the jury must take into consideration all the facts and circumstances proven by the evidence, and to them is committed the exclusive task of examining the facts and circumstances as shown by the evidence, and of awarding the compensation, if any, which plaintiff shall recover."

If the jury, as they were told to do by the instruction, should take into consideration all the facts and circumstances, the pecuniary condition of defendant being one of those facts, of course they would consider the evidence showing such pecuniary condition.

We now come to the refused instructions. The substance of all that is embraced in the ninth and tenth refused instruc-

tions, was given to the jury in instruction number five, and, if it be conceded that nine and ten contain correct propositions of law, it was not error to refuse them. A repetition of the same principle in two or more instructions, has a tendency to swell the record unnecessarily, and a practice of that kind should not be encouraged.

The eleventh refused instruction, in substance, directed the jury, that if there was as much evidence to prove that the contract was conditional, as there was to prove it unconditional, they should find for the defendant. The substance of this instruction was given to the jury in number two, as follows:

"2. The court instructs the jury, for the defendant, that the plaintiff in this case claims that there was a contract entered into by and between the plaintiff and the defendant, by which the defendant unconditionally promised and agreed to marry the plaintiff. To recover in this case, the plaintiff must prove by a preponderance of evidence that the defendant did unconditionally agree and promise the plaintiff to marry her."

The last refused instruction was as follows:

"The court instructs the jury, that in making up your verdict, you will not take into consideration the grammatical construction of the letters written by defendant to plaintiff, nor allow the peculiarity of the spelling therein to influence your decision."

The weight to be given to evidence introduced on the trial of a cause is a matter for the determination of a jury, and it is not within the province of the court to dictate to the jury on the subject. For this reason the instruction was no doubt refused, and we think properly. The letters were competent evidence for the consideration of the jury, and if the court had the right to express an opinion in regard to their bear-

ing in one respect it might in another, and thus usurp entirely the province of the jury.

It is also urged that the damages are excessive. The amount of damages to be allowed in an action of this kind, is a question peculiarly within the power of a jury, and, as is said by Parsons on Contracts, vol. 2, p. 68, courts, both in England and in this country, are very unwilling to set aside a verdict in these cases on the ground of excessive damages. In *Goodall* v. *Thurman*, 1 Head, 209, the rule is declared to be that the amount of damages rests in the sound discretion of the jury, who are to look at the rank and condition of the parties, the estate of the defendant, and to all the facts proven in the case, and award damages commensurate with the injury inflicted. In *Gough* v. *Farr*, 1 Y and J, 477, an action for breach of promise, it was held, the principle which governs the courts in cases of this description, is not whether they think the damages too large, but whether they be so large as to satisfy the court that the verdict was perverse, and the result of gross error, misconception, or undue motives.

This case, it is true, was not attended with any aggravating circumstances. There was no seduction, nor was there any attempt on the part of defendant to injure or cast any reflection upon the character of the plaintiff. But on the other hand he has always spoken of plaintiff in high terms, and his refusal to consummate an engagement which from the evidence was doubtless made, seems to have been from a change of feelings on his part toward the plaintiff, but we are not prepared to say that the damages are so excessive as to authorize a court to believe that the verdict was perverse and the result of gross error, misconception or undue motives.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*