Louisa Fritzinger, Appellee, v. William F. Ahrens, Appellant.

1. MARRIAGE—*what competent in action for breach of promise. Held,* in this case, that it was proper upon the question of the existence of a contract of marriage, for the plaintiff to prove what household duties she performed while living in the house of the defendant, how she cared for him when he was sick, etc.

2. INSTRUCTIONS—*when need not negative defenses.* The plaintiff in his instructions is not required to anticipate and negative defenses not made or relied upon by the defendant.

3. INSTRUCTIONS—*when reference to ad damnum not erroneous.* It is not error for the court to tell the jury at the close of an instruction that they "cannot give damages to exceed the amount alleged in the declaration."

4. INSTRUCTIONS—*when use of word "should" not erroneous.* An instruction which tells the jury that they "should" take into consideration in estimating the damages of the plaintiff the fact, etc., *held,* not erroneous.

5. VERDICTS—*when not excessive. Held,* in an action of *assumpsit* for breach of promise to marry, that a verdict of $3000 was not excessive where the evidence tended to establish seduction under promise of marriage and the birth of an illegitimate child.

*Assumpsit.* Appeal from the Circuit Court of St. Clair county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

J. O. MILLER and BARTHEL & KLINGEL, for appellant.

DILL & PFINGSTEN, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Louisa Fritzinger, appellee, is a widow about thirty-one years of age, who had one female child about four years of age. Prior to February 27, 1906, she lived with her parents in Smithton, Illinois. William F. Ahrens, appellant, is a farmer about forty-six years old, was never married, and has lived near Smithton, Illinois, all his life. He and his father had lived together upon the latter's farm for sometime prior to February 27, 1906, on which latter date they procured plaintiff to come with her child and live with them as their housekeeper at nine dollars per month. After she had served in this capacity about two weeks, the senior Ahrens died. The defendant then contracted with her on the same terms to live with him as his housekeeper as long as she wished. From that time until May 28, 1908, she and her child and the defendant lived together practically all the time. On August 23, 1907, the defendant went with a nephew on a trip to Niagara Falls and Jamestown Exposition, remaining away until September 7th of that year. On May 28, 1908, the plaintiff while still keeping house for the defendant gave birth to a bastard child at his home. During all the time she thus lived with the defendant he called her "ma," and frequently took her to her parents' home for dinners and short visits. He also took her frequently to market, and she sold the chickens and other produce and did the buying of such things as were used in his home. She also cared for him during a five or six weeks' illness, just previous to the birth of her illegitimate child. While the defendant was on his trip to Jamestown, at his special request, she cared for his valuable papers, such as notes, deeds, etc. Her father stayed with her at defendant's home while he was away. Defendant brought her and her child a present on his return, a pin and a locket; and, at another time, he gave her a pair of overshoes for a Christmas present. She made him a present the year

before. The defendant telephoned for the doctor when she was about to be confined, and assisted the doctor during her confinement. As soon as she recovered from her sickness in childbirth in the early part of June, 1908, the defendant at his own instance, settled with her, paying her ninety dollars for services past due. She then left his home at his direction. She had been paid no money for the last ten months, and she had not in that time asked him for money. The defendant owns sixty acres of land valued from $3000 to $3900; and about $2500 worth of notes and other securities. The foregoing with a few other details were the undisputed facts in this record. The evidence of the plaintiff, which is denied by the defendant, is that he spoke of marriage to her in July, 1906, and proposed marriage to her in February, 1907, and that she accepted; that thereafter he renewed the promise from time to time and never did deny his engagement or his intention to marry her until after her illegitimate child was born; that in consequence of his promise to marry her he seduced her and had intercourse with her four times from August 12th to December 23, 1907; that he got her with child in August, 1907; that she informed him of this fact in the following September, when he returned from Jamestown, and he then again promised to marry her but kept putting it off until her child was born; that after that event he refused to marry her, placing his refusal on the ground that he was absent from home nine months before her child was born and he could not be the father of it.

Appellee sued appellant in *assumpsit* in the Circuit Court of St. Clair county in September, 1908, for breach of promise. The five counts in her declaration charge in substance (1) a promise to marry her on request; (2) a promise to marry her within a reasonable time; (3) a promise to marry her in the fall of 1907, and seduction of plaintiff in consequence of such promise. Breach of promise was assigned in each count. Only the general issue was pleaded to the declaration.

The jury returned a verdict of $4000 in favor of appellee. After the plaintiff entered a *remittitur* of $1000, the court overruled appellant's motion for a new trial and entered judgment against him for $3000 and costs of suit in favor of appellee. Appellant has appealed to this court and relies on the following points for a reversal: (1) that the court admitted improper evidence to the jury; (2) that the court failed to properly instruct the jury as to the law; (3) that the damages are excessive.

First. It was proper for the plaintiff to prove what household duties she performed while living in his house, and how she cared for him when he was sick, also to show that they went to market together, and that she sold his eggs, poultry, lard, etc., and did the buying of the groceries and other articles for the household. It is said by the appellant's counsel that this evidence does not in any way tend to prove a marriage contract. These circumstances by themselves are slight evidence of a contract of marriage, it is true; but, when considered with all the other circumstances in this record already recited, they certainly tend to prove a relation between these parties that is a little closer and a little more confidential and affectionate than that ordinarily existing between master and servant. The defendant denied that he ever promised to marry the plaintiff, and also denied that he ever had sexual intercourse with her. Both of these facts were material to plaintiff's case; and both of them may be proved by circumstances tending to show affection or the manner in which they held or regarded each other, as well as opportunity, etc. Under such a denial by the defendant, all the facts and circumstances existing between the parties prior to and after the time of the alleged marriage contract and seduction, tending to establish such contract or seduction, must be regarded as proper evidence for the jury. Richmond v. Roberts, 98 Ill. 472.

Second. Appellant complains of the giving of plaintiff's instruction No. 2 to the jury, because it directs a verdict in favor of the plaintiff in case they find all the material facts therein mentioned proved by the greater weight of the evidence, without telling the jury that the evidence must also show that the defendant refused to marry the plaintiff without a cause. No justification or excuse whatever was pleaded or proved by the defendant except the bare fact that he testified that he made no promise to marry her and never had sexual intercourse with her. No instruction of appellant had any suggestion of excuse for his refusal to marry her. The proof in this record nowhere shows even an opportunity for sexual intercourse with any other man; and does not show excessive drunkenness or other vicious habits as matter of justification. It has been often ruled by our Supreme Court that the plaintiff is not required to submit in his instructions matters of defense or to negative them, in his instructions to the jury. It is proper for the plaintiff to submit his case to the jury on his declaration and proofs and to instruct the jury that if he has proven his case by the greater weight of the evidence that he is entitled to recover. We do not think it is proper or reasonable to require the plaintiff to anticipate and negative in his instructions a defense not made or relied on by the defendant.

The objection to the third instruction of appellee is without merit. It is not error to tell the jury at the close of an instruction that they "cannot give damages to exceed the amount alleged in the declaration." It is such expressions as "not to exceed $5000," "the plaintiff cannot recover more than $5000," and other like expressions that tend to lead the jury to understand that they ought to or may allow the full amount so named, that the Supreme Court and Appellate Courts have condemned as error. Kellyville Coal Co. v. Strine, 217 Ill. 516, 533.

The appellee's instruction No. 4 is objected to by appellant for the reason that the instruction is peremptory in character telling the jury that they "should" take into consideration in estimating the damages of the plaintiff, the fact that in consequence of such promise to marry her she was seduced and begotten with child by the defendant, if they so find from the evidence. Appellant insists that the word "should" in this instruction ought to have been "may;" or, that the instruction should have been so worded as to leave it discretionary with the jury whether or not they would consider these facts matters of aggravation of damages. The same objection in substance is made to appellee's instruction No. 5 which closes with the words "are to be taken into consideration by the jury in making up the verdict, and go in aggravation of damages." These instructions are copies of instructions found in our Supreme Court reports and which were thoroughly discussed and approved by our Supreme Court. In discussing said instruction No. 4, our Supreme Court in case of Tubbs v. Van Kleek, 12 Ill. 447, says: "It is possible, but hardly probable, that a case may arise where both parties are equally culpable, but the instruction under consideration, does not suppose such a case. It is based upon the presumption, that the jury believe from the evidence that the defendant, under pretense of marriage, enticed the plaintiff from the path of rectitude and duty; and in such case, to say that both parties were equally in fault, would be to confound the innocent with the guilty, and to visit the same condemnation on the party defrauded, as on him committing the fraud." This same instruction and also No. 5 were again approved in case of Fidler v. McKinley, 21 Ill. 308. Such damages are declared on page 313 of the latter opinion to be those immediately resulting as a consequence of the breach of promise, in other words they are actual damages as distinguished from exemplary or punitive

damages. No idea of punishment for the public good or to make a public example is given to the jury by these instructions. In this view of the case the instructions are not reversible error although it might be more nicely accurate to so frame the instructions in every case as to leave it to the discretion of the jury to award such damages, particularly if there were any circumstances of mitigation in the case. For discussion of damages for seduction and of exemplary damages, and mitigation of damages in breach of promise, see Sutherland on Damages, vol. 3, secs. 984, 985, 986, 987 and 990. One of the important inquiries in this case is should this jury have given this plaintiff damages for seduction, as a matter of right. Examining into this record we find absolutely no charge or objection of any kind against this plaintiff or her character, except the bare fact of this intercourse and this bastard child as a result thereof; and the jury has found, and were required to find, by these instructions, before she could recover such damages, that he was her seducer by reason of such promise of marriage. The jury were properly instructed as to the meaning of the word "seduction." We do not think that the defendant could reasonably and conscientiously hope that any other jury would under the evidence in this record do otherwise than give such damages against him, even if instructed in the language the appellant insists is the law in this case. We think such damages were thoroughly warranted under the evidence in this case, and we are entirely satisfied with the instructions as given. See also Burnett v. Simpkins, 24 Ill. 265; and Poehlman v. Kertz, 204 Ill. 420.

The other objections to appellee's instructions are untenable. The last case above cited holds against the contention of the appellant that seduction must be pleaded. We are also satisfied with the ruling of the court in refusing to give appellant's instructions numbered 6, 7 and 8. They are of a character liable to mislead a jury into believing that if the defendant denies

the appellee's material charges and she is the only one to affirm them that the jury must find for the defendant. Two of these instructions are also bad because they assume the fact that the plaintiff and defendant are of equal credibility. Such instructions merely serve to confuse, rather than to aid, a jury in properly reaching a verdict. Johnston v. People, 140 Ill. 350.

Fourth. As we have already indicated the judgment in this case is not excessive. While $3000 may be a heavy burden for the defendant to bear, yet, in our judgment, it is but poor recompense for the injury and damages that this plaintiff has suffered. Her story was simple and convincing. The circumstances are corroboration of her story all the way through. The jury believed her and have found against the defendant's contentions. If, as she says, he made the many promises of marriage disclosed in this record and then sought to, and did, seduce and ruin her, using as his dire and powerful argument, that she could trust him implicitly and rely on his word that they were the same as man and wife, and that they would be man and wife as he had promised her, for the ruin of such a woman as this record proves her to be in this manner, the damages are certainly not excessive. Looking at them from her standpoint they are light. The evidence shows that this plaintiff is industrious, a good housekeeper and was very specially prized for these qualities by the defendant before he seduced her. She is not even accused of being unlawfully intimate with any other man, except that the defendant says he did not have sexual intercourse with her, or does not remember it if he did. The bare suggestion of a bad memory in this regard by the defendant, staggers the credulity of all mankind, and condemns his story with all reasonable men of the most common experience.

We have considered all that the able counsel for the appellant have said in his behalf, and believing that

the judgment of the lower court is right, and that there is no reversible error in this record, the judgment is affirmed.

*Affirmed.*