EARL DAVIS *v.* CENTRAL VERMONT RAILWAY COMPANY.

January Term, 1915.

Present: POWERS, C. J., WATSON, TAYLOR, SLACK, and HEALY, JJ.

Opinion filed January 23, 1915.

*Railroads—Duty to Fence Lines—P. S. 4453—Injury to Stock—Negligence of Plaintiff's Agent—Proximate Cause—Harmless Error—Wrong Instruction—Cured by Other Instruction.*

P. S. 4453, requiring those operating a railroad to fence the sides thereof imports full responsibility for the damages resulting from failure to fulfil that requirement, regardless of the particular manner in which such damages result.

Where a case was submitted to the jury on the theory that the defence of contributory negligence was available to defendant, whether that defence was really so available will not be considered on review of a judgment for plaintiff.

Evidence *held* sufficient to take to the jury the question of contributory negligence on the part of plaintiff's agent.

Where plaintiff's horse escaped from plaintiff's land onto an adjoining railroad track, owing to the failure of the railroad company to fence the sides of its right of way, and was killed by falling off a railroad bridge, the failure so to fence was the proximate cause of the accident, and plaintiff can recover for the loss of the horse.

Any error in an instruction to which defendant excepted was cured by the withdrawal of that instruction and the giving of another on the same point, to which no exception was taken.

CASE for negligence. Plea, the general issue. Trial by jury at the April Term, 1914, Windham County, *Stanton,* J.,

presiding.  Verdict and judgment for the plaintiff.  The defendant excepted.  The opinion states the case.

*Clarke C. Fitts, Harold E. Whitney,* and *Hermon E. Eddy* for the defendant.

*Joseph H. Martin* and *Arthur P. Carpenter* for the plaintiff.

POWERS, C. J.  The plaintiff's hired man unhitched a pair of horses from the wagon and led them into the barn; when he went to open the stable door, one of the horses turned and ran out of the barn, through the yard and, for want of a fence, on to the railroad track.  He ran up the track to the defendant's "Salmon Hole" bridge, went across the river thereon, but fell off at the north end and was killed.

The defendant says that it is not liable in this action brought to recover the value of the horse, because (1), while the duty to fence its road is imposed upon it by P. S. 4453, liability for a neglect of that duty is limited by P. S. 4456 to damages done by its agents and engines; and since the death of the horse was not caused by any act of its agents, nor by its engines, there can be no recovery here; and (2), if this position be unsound, the record shows that the hired man was guilty of contributory negligence, and that this is so plain that the court below should have taken the case from the jury and given judgment for the defendant; and (3), the lack of a good and sufficient fence was not the proximate cause of the horse's death.

1.  The first general enactment requiring railroad companies to fence their roads appears in §44 of No. 41, Acts of 1849.  It was therein provided that the company should build such fences, and in case of default, an absolute liability was imposed upon the company for damages done to animals by its agents and engines.  This section also provided a penalty for leading or driving animals on the right of way within the fences.

If the plaintiff's claim was obliged to rest upon the provisions of this statute alone, we might be required to hold, as we are asked to do, that liability for the failure to fence is limited to damages done by the agents and engines of a railroad company,—as was done in *Schertz* v. *Indianpolis, etc. Ry. Co.,* 107 Ill. 577, *Foster* v. *St. Louis, etc. Ry. Co.,* 90 Mo. 116, *Peru & I. R. R. Co.* v. *Hasket,* 10 Ind. 409, and some other cases, under

similar provisions. But the plaintiff's claim does not stand on this act, alone. The Legislature has broadened the statute. By No. 51, Acts of 1850, it was provided that every railroad company thereafter chartered should construct good and sufficient fences on each side of its road. And if a railroad company neglected so to do, a person aggrieved might build the fence, and after the value thereof had been appraised by the selectmen, the company was required to pay the amount to such party. It was also provided that any company theretofore chartered should be subject to the provisions of the act, if it neglected to build such fences after thirty days' notice.

It thus appears that two statutory provisions regarding railroad fences were in force: And this situation continued for some years. §44 of the Act of 1849 became G. S. ch. 28, §47; and the Act of 1850 became §§50, 51 and 52 of the same chapter. These provisions became R. L. 3409, which provided that each railroad corporation should construct and maintain on the sides of its road when completed and in running order, a good and sufficient fence. This section became, in turn, V. S. 3874, which was the same as is P. S. 4453.

From the foregoing it appears that the last named section did not come from the Act of 1849 alone, but is the result of that act and the Act of 1850 hereinbefore referred to. We conclude, therefore, that the Legislature, whatever its early purpose may have been, has now committed itself to the logical policy of requiring railroads to fence their lines; and that this obligation carries with it full responsibility for damages resulting from a failure to comply therewith, without regard to the particular manner in which such damages result.

2. We are not called upon to decide the question whether or not the defence of contributory negligence is available to this defendant, for the case was submitted to the jury on the theory that it was. But, assuming that this theory is correct, we are unable to sustain the defendant's claim that the evidence made that question for the court. It is true that the hired man might have driven into the barn before he unhitched the horses, and that this might have averted the accident. It is also true that the horse was a spirited one, and had run out of the barn before. But it does not appear how many times, during the year and a half this same hired man had handled this team and unhitched it in this same way, the horse had so misbehaved; nor does it

appear that he had so offended more than once before. The team had been driven on the night of the accident to Townshend and back, and it was about ten o'clock at night and very dark. The question as to the hired man's conduct was, in the circumstances shown, for the jury. The inferences were not all one way, and a jury could well, as this one did, conclude that the hired man acted with sufficient prudence to meet the requirements of the law.

3. It is further claimed that this plaintiff cannot recover because the lack of a fence was not a proximate cause of the accident resulting in the death of the horse. But as we have seen, this accident resulted from the defendant's failure to comply with a statutory requirement; it was, in a legal sense, a direct result, for no active cause intervened; it was an accident reasonably to be anticipated; it would not have happened but for the defendant's failure. In these circumstances the plaintiff may recover, since the liability is coextensive with the neglected duty. *Hurd* v. *Rutland & Burlington R. R. Co.*, 25 Vt. 116; *Congdon* v. *Cent. Vt. R. R. Co.*, 56 Vt. at p. 395; *Norris* v. *Androscoggin Railroad Co.*, 39 N. H. 273; *Hayes* v. *Mich. Cent. R. R. Co.*, 111 U. S. 228.

The defendant presented eleven requests to charge, and excepted "to the failure of the court to comply with the defendant's first, second, third, fourth, fifth, sixth, seventh, ninth, tenth and eleventh requests."

Assuming that these exceptions are not too general to be available, we need take no time with them, for they only raise in various ways and forms the questions hereinbefore considered.

The defendant also excepted to the charge wherein the jury was instructed "that the question for the jury to consider is, was the negligence of the defendant the cause without which the accident would not have occurred." The fault in this instruction was not pointed out, but the court immediately withdrew it, and re-charged the jury on the subject of proximate cause. To this supplemental charge, no exception was taken. So, treating the exception to the original instruction as sufficient, the error, if any, was wholly cured. *Cameron* v. *Joslyn,* 88 Vt. 86.

A transcript is referred to in the bill and is made controlling; but it is not furnished us, so we conclude that the defendant is satisfied to stand on the bill as printed.

*Judgment affirmed.*