ANNA C. DYER v. CHARLES H. LALOR.

October Term, 1919.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 17, 1920.

*Breach of Promise to Marry—Statute of Limitations—Breach—Marriage to Another—Postponement Recognition of Contract—Evidence—Postponement by Mutual Agreement—Express Mutual Promise—Betrothed Relations—Irresponsive Answer—Reasonable Time—Court's Discretion—Instructions to Jury—Allegations and Proof of Time—Compensatory Damages—General Exception to Charge—Supplemental Charge—Necessity of Specific Objection—Motion to Set Aside Verdict—Excessive Verdict—Proof of Promise Made at Time Other Than Alleged—Allegations of Requested Performance—Promise to Marry Within a Reasonable Time Continuous Contract—Repetitions of Promise*

*Not New Contract—Judgment Not Arrested Except for
Matters Apparent of Record—Testimony Not Part of Record
—Statute of Frauds.*

1. In case of a mutual promise to marry there is no right of action until there is a breach of the promise; and until such breach the statute of limitations does not commence to run.

2. In such case, the marriage of the man to another woman constitutes a breach of his promise to marry.

3. A postponement, by mutual understanding of the parties, of the time of marriage, leaving it, as before, in legal effect, within a reasonable time, did .not terminate the contract nor make a new one, but was, in the circumstances, a recognition of an existing one.

4. In a woman's action for breach of promise to marry, evidence that she ceased work at a certain time at the defendant's instance and assurance that she did not have to work, that they were engaged, and he was going to take care of her, and evidence that he would go to her home and assist in preparing meals, taking provisions with him, was admissible on the question as to whether the time of marriage was postponed by mutual agreement.

5. In such case, all the facts and circumstances that took place between the parties from the time they first became acquainted to the time of the alleged breach, were admissible in corroboration of her testimony of an express mutual promise between them.

6. In view of the fact that in the promise of marriage, as originally made between them, the defendant told plaintiff that when he reached the height of his ambition and success they would be married, his statement to her fourteen years later that he was worth $75,000 was admissible on the issue of betrothed relations then existing between them.

7. Evidence that when defendant visited plaintiff at her home, prior to her mother's death, in speaking to the latter, he always called her "mother," was admissible on the same issue.

8. The mere fact that the answer of a witness is not responsive does not make it inadmissible.

9. Evidence that shortly after the death of plaintiff's mother in February, 1918, the defendant told her that "now that his mother was gone, he .would have to show himself a man," and

arranged the marriage in six or eight weeks from March 28, 1918, was admissible on the question of what would be a reasonable time.

10. Evidence that soon after the above conversation the plaintiff made preparations for her marriage clothes and talked that matter over with the defendant was admissible as tending to establish the promise of marriage.

11. It is within the court's discretion to permit an answer not strictly responsive, but which is proper evidence, to stand.

12. The statement in the charge that a contract to marry may be made part at one time and part at another was unobjectionable when, taken with the context, it is clear that the court meant that the promise to marry might be made at one time and the time of performance "be subsequently fixed by the parties."

13. The statement in the charge, with reference to the time of the contract as alleged in the declaration, that the time when the promise was made is not essential, for such time is not of the essence of the contract, was not objectionable, as it meant nothing more than that it is not essential that the true time when the promise was made be the time alleged in the declaration.

14. Actions for breach of promise to marry fall within the general rule that, though a time of the making of the promise must be alleged, it is only for form, and the plaintiff is at liberty to prove the promise as made at any other time; time not constituting a material part of the contract.

15. Evidence that after the plaintiff learned of the defendant's marriage to another woman she was quite run down, and saw a physician, who told her she was on the verge of a nervous collapse, supported the instruction that the shock to plaintiff's nervous system was an element proper to be considered by the jury in awarding compensatory damages.

16. This Court will not consider the point that an instruction was not authorized by the pleadings when it was not raised below.

17. This Court will not consider specific objections when the exception was general, and no ground stated.

18. When a party claims that the court, in its charge, misconceived the tendency of the evidence, its attention should be called thereto, so the mistake, if there be one, may be corrected.

19. The claim that the charge as to damages · was too general, and allowed the jury too much latitude and too much opportunity to speculate, cannot be raised by a general objection.

20. Where, in a supplemental charge, the elements in the original charged objected to were withdrawn from the consideration of the jury, the error in the original charge, if any, was cured by the withdrawal.

21. An ambiguity or an indefiniteness in a part of the charge is not reached by a general exception, but the exceptant should specifically point out the defect to the trial court, with a request or suggestion that the instruction be made clear.

22. It was not error to refuse to comply with a requested charge on damages that was couched in such general and sweeping terms that it was not calculated to give the jury an accurate understanding of the law upon that subject, or to direct their attention to the particular and material elements of the case to which it was applicable.

23. A motion to set aside a verdict is addressed to the legal discretion of the court, and the disposition of it made is not reviewable unless it appears that in its exercise that discretion was abused.

24. The mere fact that an award in damages is larger than is commonly given in such actions is not a sufficient reason for setting aside the verdict nor for reducing it in amount.

25. Difference in judicial opinion is not synonymous with abuse of judicial discretion.

26. On the record, it was not an abuse of judicial discretion for the trial court to refuse to set aside a verdict for $20,000 on the ground that in reaching it, the jury acted from passion, prejudice, or sympathy.

27. Where the time of a promise to marry was alleged under a *videlicet* in each of the four counts in a declaration, a promise made at any time other than the time alleged could properly be proved.

28. A declaration for breach of promise to marry, setting forth a mutual promise to marry within a reasonable time, should generally allege a request of performance by the plaintiff; but the necessity therefor is obviated by allegations showing that the defendant has put it out of his power to perform by marrying another.

29. The promise to marry within a reasonable time was, in law, continuous until the time of the alleged breach by the defendant, at

which time, and not when the original promise was made, the cause of action accrued.

30. When parties once promise to marry each other, repetitions of that promise on different occasions thereafter are but ratifications of the first one, and constitute no new contract; there being but one contract, and that being the one created by the original promise.

31. A judgment is never arrested except for matters apparent of record; and the testimony is no part of the record for this purpose, even though it be a part of the bill of exceptions.

32. A contract to marry, which by its terms might have been fully performed within one year, is not void by the statute of frauds, although it in fact extended beyond that time.

ACTION OF CONTRACT for breach of promise of marriage. Pleas, the general issue and the statute of limitations. Trial by jury at the March Term, 1919, Rutland County, *Butler, J.*, presiding. Verdict and judgment for the plaintiff for $20,000. The defendant excepted. The opinion states the case.

*M. C. Webber* for the defendant.

*Lawrence, Lawrence & Stafford* for the plaintiff.

WATSON, C. J. The declaration, based on an alleged breach of promise to marry, contains four counts: The first, declaring on a promise made on, to wit, May 2, 1916, to marry when requested; the second, on a promise made on, to wit, May 2, 1916, to marry within a reasonable time; the third, on a promise made on, to wit, March 28, 1918, to marry within a reasonable time; and the fourth (called in the record the substitute count) on a promise made on, to wit, April 10, 1901, to marry thereafter, and further alleging that said agreement was by agreement from time to time postponed from time to time until October 5, 1918. All the counts allege the breach to consist of defendant's marrying another woman on the day last named. Defendant pleaded the general issue to all the counts, and the statute of limitations to the alleged contract set up in the last count. No replication being filed to the plea of the statute, issue was treated as joined thereon by force of a rule of practice.

The plaintiff introduced evidence tending to show mutual promises of marriage (in legal effect) within a reasonable time, made between her and the defendant in March, 1901, subject to objection on the ground that no action would lie thereon, the statute of limitations being pleaded. No exception was taken to this particular ruling; but inasmuch as the same legal question is raised several times where exceptions were taken in connection with the admission of evidence, and in connection with the charge to the jury, we consider it at this time in disposition of all exceptions in a legal sense within the same group.

[1, 2] The material allegations of the fourth count were strongly supported by the evidence, direct and circumstantial, introduced by the plaintiff. It is said that there was no evidence showing any agreement to postpone the time of performance. But an examination of the transcript convinces us that the circumstances had such tendency as evidence. There was no right of action by the plaintiff until there was a breach by defendant of the mutual promise of marriage, and consequently until such breach the statute of limitations did not commence to run. The evidence had no tendency to show a breach prior to the time of his marriage to another woman, on October 5, 1918. That act in itself constituted such a breach.

[3, 4] A postponement, by mutual understanding of the parties, of the time of marriage, leaving it, as before in legal effect, within a reasonable time, did not terminate the contract, nor make a new one. Rather, in the circumstances shown by plaintiff's evidence, it was a recognition of an existing contract. *Clement* v. *Skinner*, 72 Vt. 159, 47 Atl. 788. On the same authority, there was no error in permitting the plaintiff to testify that, being a music teacher and engaged in giving music lessons, she ceased such work in the spring of 1917 at his instance, he saying to her that she did not have to work, that they were engaged, and he was going to take care of her. This evidence was admissible on the question as to whether the time of performance was in fact postponed by mutual agreement. Of the same tendency and properly admitted was the evidence that defendant would come to plaintiff's home and assist in preparing meals, bringing with him venison in season, partridge, steaks, chicken, fish, baked meat, fruit, and candy.

[5-7] To corroborate the testimony of an express mutual promise between the plaintiff and defendant, all the facts and

circumstances that took place between them from the time when they first became acquainted with each other in 1900 to the time of the alleged breach were admissible in evidence. *Whitcomb* v. *Wolcott,* 21 Vt. 368; *Anderson* v. *Kirby,* 125 Ga. 62, 54 S. E. 197, 114 A. S. R. 185, 5 Ann. Cas. 103; *Vaughan* v. *Smith,* 177 Ind. 111, 96 N. E. 594, Ann. Cas. 1914 C, 1092; *Richmond* v. *Roberts,* 98 Ill. 472; *Russell* v. *Cowles,* 15 Gray (Mass.) 582, 77 A. D. 391; *Burnham* v. *Cornwell,* 16 B. Mon. (Ky.) 284, 63 A. D. 529; 4 R. C. L. 169, § 26. And in view of the fact that in the promise of marriage, as originally made between the parties, the defendant stated that when he reached the height of his ambition and success, they would be married, his statement to the plaintiff in the spring of 1915, that he was worth $75,000, was relevant to the issue of betrothed relations then existing between them. *Clement* v. *Skinner,* 72 Vt. 159, 47 Atl. 788. As bearing on the same question, evidence was properly received tending to show that when defendant was visiting the plaintiff at her home, prior to the death of her mother in February, 1918, he, in speaking to the latter, always called her "mother."

[8, 9] The plaintiff's attention (when on the witness stand) was called to an occasion shortly, or a few weeks, after her mother's death, and asked if defendant called at her home and made some statement in reference to their marriage. Answering in the affirmative, she was asked to state the circumstances of that call. She answered that he said he realized "now that his mother was gone," he would have to show himself a man, "and he arranged the marriage in six or eight weeks from the 28th of March." Counsel for defendant objected to the part of the answer that he arranged the marriage within a certain time as not responsive. Further that, since the only allegations in the pleadings are an arrangement to marry within a reasonable time, the answer was not material, and he moved to strike it out. Exception was saved to the ruling permitting the answer to stand. These objections are without force. The fact that so much of the answer was not responsive, did not make it inadmissible. *Massucco* v. *Tomassi,* 80 Vt. 186, 67 Atl. 551. And such an arrangement by the parties was evidence of what would be a reasonable time. *Clement* v. *Skinner,* before cited.

[10] The plaintiff was asked whether she made any preparations, or did after that, in the way of getting her marriage clothes. The time referred to in the question was in Holy Week,

March, 1918. Objection was made on the ground that the declaration contained no allegations for special damages. The evidence was admitted and exceptions saved. She answered in the affirmative, and that the matter was talked over between her and the defendant. In answer to other questions, she said it related to a dress she had not made up and which she was to use for the occasion; that it was a dress defendant gave her the year before in January, telling her at the time that he would not make it up, "that we would use that later." It appearing that the matter of what she was doing and was preparing to do in the respect named, was talked over between them, the evidence given had a direct tendency to establish the promise of marriage, and was properly received. *Munson* v. *Hastings,* 12 Vt. 346, 36 A. D. 345; *Rime* v. *Rater,* 108 Iowa, 61, 78 N. W. 835. The distinction between plaintiff's acts in preparation for the marriage, made with defendant's knowledge, and those made without the latter's knowledge, is pointed out in *Russell* v. *Cowles,* 15 Gray (Mass.) 582, 77 A. D. 391.

[11]   In cross-examination of the plaintiff as a witness, she was asked whether defendant during all the twenty years (of her claimed courtship) was paying polite attention to other ladies, and answered, "Not attention like that. He denied that." Defendant moved to strike out the answer, because (it was said) there was nothing in the question that excused the plaintiff's saying, "He denied that." Exception was saved to the court's refusal to strike out. Though the part of the answer to which objection was made was not strictly responsive, it was proper evidence. Consequently it was discretionary with the court to permit it to stand.

[12-14]   Exception was taken to the statement in the charge to the jury that such a contract may be made part at one time and part at another; also to the statement that the time when the promise was made is not essential, for such time is not of the essence of the contract. The former statement is unobjectionable when taken with the context. It is clear from what was said immediately following and as a part of the same sentence, that what the court meant was that the promise to marry might be made at one time, and the time of performance "be subsequently fixed by the parties," conveying the idea that even though the time was not specified in the promise of marriage, the parties could fix it by agreement later, and if not so fixed by them,

·either party might insist upon its performance within a reason-
.able time.   The latter statement objected to was made in connec-
tion with the statement that "something has been said in respect
to the time of the contract as alleged.in the declaration."   Refer-
ring to this, the court said, "but the time when the promise was
made is not essential, for such time is not of the essence of the .
·contract."   This means no more, in that connection, than that it
is not essential that the true time when the promise was made
be the time alleged in the declaration..   The general rule is that,
though a time of the making of the promise must be alleged, it is
·only for form, and the plaintiff is at liberty to prove the promise
as made at any other time, because the time does not constitute
a material part of the contract.   1 Chit. Pl. 257.   And cases of
this kind fall within the general rule.   *Garmong* v. *Henderson,*
112 Me. 383, 92 Atl. 322; *Connolly* v. *Bollinger,* 67 W. Va. 30,
·67 S. E. 71, 20 Ann. Cas. 1350.

    [15-18]   Exception was taken to the court's including as an
·element proper to be considered by the jury in awarding com-
pensatory damages, the shock to the plaintiff's nervous system.
No ground of the exception was given, or in anywise· indicated.
It is argued that the exception should be sustained because, it is
said, there was no allegation of injury to plaintiff's health or
.shock to her nervous system; and, further, that there was not
sufficient evidence on which to submit such question to the jury.
We do not think this part of the charge was unsupported by evi-
dence.   The plaintiff, ·in testifying as to the effect knowledge of
defendant's marriage had on her, said she was quite run down;
that she saw a physician, and he told her she was on the verge of
a nervous collapse.   The point that the instruction was not
authorized by the pleadings, was not raised below, nor suggested
to the trial court.   It is therefore not before us.   *Kilby* v. *Erwin,*
84 Vt. 266, 78 Atl. 1021.

    The charge also included, as an element of damage, any in-
jury which the plaintiff may have suffered to her reputation or
future prospects.   An exception was saved to its submission to
the jury, and to the charge given in that respect.   The exception
was general and no ground stated.   As in the preceding instance
discussed, it is now urged (a) that the instruction was without
evidence to support it, and (b) that it was outside the scope of
the declaration.   But as neither of these grounds was called to
the attention of the trial court, neither is before us; question (b)

is like that determined in the preceding paragraph; question (a) stands no better, for if defendant claimed that the court had misconceived the tendency of the evidence, its attention should have been called thereto, so the mistake, if there be one, might be corrected. *Gregg* v. *Willis,* 71 Vt. 313, 45 Atl. 229.

[19]  The jury were instructed that if the plaintiff was entitled to recover she would be entitled to recover such amount as would compensate her for the benefit lost, or detriments suffered, because of the breach of promise to marry, if the jury find there was ·a promise and such a breach.  To this an exception was taken, but no ground assigned.  It is now stated by defendant in his brief that the difficulty is that the charge was too general, allowed the jury too much latitude and too much opportunity to speculate.  But such an error, if it exists, cannot be reached by a general exception to that part of the charge without assigning any grounds.  If more specific instructions were desired, such desire should have been made known to the trial court at the time. *Magoon* v. *Before,* 73· Vt. 231, 50 Atl. 1070; *de Nottbeck* v. *Chapman,* 93 Vt. 378, 108 Atl. 338.

[20]  By the charge on the question of damages, the jury were permitted to include plaintiff's loss of employment, and (in effect) her time and labor in preparation for the marriage, if they found such there were in consequence of the engagement and breach.  Exceptions being taken to these inclusions, the court gave a supplemental charge in which those two elements were withdrawn from the consideration of the jury on that question.  No exception was saved to the supplemental charge.  The errors in the original charge in these respects, if any, were cured by the withdrawal. *Davis* v. *Central Vermont Ry. Co.,* 88 Vt. 460, 92 Atl. 973; *Barrell* v. *Dickinson,* 82 Vt. 551, 74 Atl. 234.

The court further charged on the question of damages as follows: "The circumstances and the effect in a pecuniary way, or her loss of pecuniary advantage that was the natural and probable result of the breach of this promise of marriage, for the damages which the plaintiff suffered by reason of the breach of this contract, if there was a contract and a breach, is wholly a question of fact for your consideration and determination."  Defendant excepted to the charge permitting the jury to "consider, in the subject of damages, the circumstances and effect in a pecuniary way of her loss of pecuniary advantage, the natural and probable result of the breach."  These quotations are from

the transcript which is, in this respect, made controlling. Defendant says (in his brief) the objection to this charge is that it is altogether too indefinite and conjectural and leaves too broad a field for the jury to consider. Thus impliedly it is said that the subject matter was proper, but that the charge was not sufficiently definite to keep the jury within the bounds of proper consideration.

[21] There are grave doubts whether the part of the charge to which this exception was taken can fairly be given the meaning assigned to it by defendant. Whether it might not better be construed as stating to the jury that the matter mentioned in the forepart thereof is the thing which (in the language of the concluding part) ''is wholly a question of fact for your consideration and determination.'' Whether this be termed an ambiguity or an indefiniteness, the defect was one which, if claimed by the exceptant, should have been specifically pointed out to the trial court, with a request or suggestion that the instruction be made clear. Such a defect is not reached by a general exception to such part of the charge, without any specific grounds being stated. *Schuylkill & D. Improv. & R. Co.* v. *Munson,* 14 Wall. 442, 20 L. ed. 867.

[22] Exception was saved to the refusal to charge according to defendant's second request, it being that the only damages that could be recovered on the pleadings and the evidence were ''compensatory damages merely, limiting her recovery to the loss, if any, that she has sustained by loss of marriage, injury of feeling, affections, and wounded pride.'' In his brief, defendant says that in estimating compensatory damages in such a case, ''the jury may allow compensation for loss of advantages of the marriage; a reasonable expectation of sharing in the husband's wealth, the permanent home and advantageous establishment, and the social standing which might follow the marriage. But these are all embraced under the one element of damage by reason of loss of marriage.'' He further says, ''Plaintiff is also allowed to recover damages for wounded affections and loss of the comfort and companionship of a husband.'' And, further, ''The plaintiff may also recover for mental suffering. This may include compensation for mortification and shame caused by the termination of the engagement, distress of mind, disgrace and loss of standing in the community.'' As supporting authority for each of the foregoing statements, Sedgwick on Damages is

cited. What more need be said to show that the request was couched in such general and sweeping terms that it was not calculated to give the jury an accurate understanding of the law upon the subject of damages, or to direct their attention to the particular and material elements of the case to which it was applicable? The refusal was not error. *Norfolk & W. R. Co.* v. *Earnest,* 229 U. S. 114, 57 L. ed. 1096, 33 Sup. Ct. 654, Ann. Cas. 1914 C, 172.

The defendant moved to set aside the verdict for that (1) it is against the weight of the evidence; (2) the damages are excessive; and (3) the jury were plainly influenced by bias, prejudice, or passion. A hearing was had on the motion, and to the overruling of it defendant excepted. He says in his brief that all the evidence is before this Court on this exception, on the ground that the verdict was contrary to instructions· or wholly unsupported by the evidence. But the ground thus stated is hardly shown by the record which governs. In disposing of the motion, the court filed its written opinion and the same is made a part of the record.

[23] This motion was addressed to the legal discretion of the court, and the disposition of it made is not reviewable, unless it appears that in its exercise that discretion was abused. *Lincoln* v. *Central Vermont Ry. Co.,* 82 Vt. 187, 72 Atl. 821, 137 A. S. R. 998; *French* v. *Wheldon,* 91 Vt. 64, 99 Atl. 232; *Smith* ·v. *Martin,* 93 Vt. 111, 106 Atl. 666. From what we have already said concerning the evidence, it is seen that the trial court acted well in viewing the motion as containing no merit, other than what there may be in connection with the assignment of excessive damages.

Whether the verdict was so great as plainly to indicate that, in reaching it, the jury disregarded the testimony, or acted from passion or prejudice (said in *Barrette* v. *Carr,* 75. Vt. 425, 56 Atl. 93, to be the true rule), and so it should have been set aside on the motion, and failing this, makes an abuse of discretion apparent, is a question requiring careful consideration.

In considering the motion on this ground the trial court made a comparative examination of cases of the same kind, involving a similar question, both in this State and in other jurisdictions, some of which resulted in setting aside the verdict because excessive, and some not. The result of such examination is shown by the record. The evidence was considered as bearing

on this particular question, and after such examination as to the law and facts, the court reached the conclusions shown below. We quote from the opinion in the record: "Here the verdict was $20,000, with defendant's conceded wealth exceeding $60,000. To set aside this verdict for passion, prejudice, sympathy or disregard of instructions, it would require the court to say that the size of the verdict alone, in view of defendant's wealth, is controlling. Wealth alone is but one factor. The size of the verdict, as compared with the wealth of defendant, is relative only. But this is not all. The contract is broken; fond hope, so long and ardently cherished, has been forever dissipated, and the advantages she might reasonably have anticipated are forever lost to her. The difficulty, therefore, of setting aside a verdict in this class of cases is, that the damages are not capable of being measured and estimated by any established method of computation, but involve reputation, social position, hope of advancement, as well as mental suffering, sometimes extremely severe, sometimes causing little or no injury. So reasonable men differ. There is no general rule or fixed standard of measurement. Each case must stand upon its own facts. And so the verdict must stand unless so beyond all reasonable limits as to make it the duty of the court to set it aside and submit it to another jury with the reasonable expectation, at least, that it would be substantially reduced.

"In this case the jury had other evidence on which to base their verdict, for it appeared that the plaintiff and defendant were intimately associated for a period of about eighteen years. The evidence tended to show that a promise of marriage was made in 1901; that the time was postponed by mutual agreement until he could attain his ambition; to enable him to accumulate his wealth she was induced to forego the pleasure and comforts of married life, supporting herself, consulting and advising with him; that he told of his financial success from time to time, and in 1918 arrangements were made to consummate this marriage in five or six weeks; that he represented to her his fortune to be from seventy-five to one hundred thousand dollars, and that her home was secured. She was then thirty-nine years old; she had waited from girlhood to middle age, possibly sacrificing the hope of a family for the wealth he was to accumulate. She refused to believe that her confidence was to be violated until she learned of his marriage to another. This seemed to be without excuse or

provocation, so that it was entirely without her fault. It is therefore well argued that she had a right to expect to enjoy the advantages of his wealth and social position, which would be the natural and probable result of the marital life, and to inherit a goodly portion, should she in ordinary course of events survive him.

"The parties had a fair trial by a well selected and impartial jury, and no exhibition of passion, prejudice, or sympathy was apparent. These, with other facts developed in the evidence, preclude the court from using its discretion to set aside the verdict on the grounds of the motion, for to do so, in the circumstances, might justly be regarded as an abuse of its discretion. Besides, we are all agreed that the verdict ought not to be disturbed. The motion is therefore denied."

[24-26]   We have quoted thus fully from the opinion rendered by the judges of the trial court, because the course of reasoning there shown, when considered with the record, has a great bearing on the question, whether in making the ruling there was an abuse of discretion. It cannot be said from the record, when studied, that the reasoning was not well founded. The evidence of record is such as to dissipate all suspicion that the jury, in reaching their verdict, disregarded the testimony or acted from passion of prejudice. The mere fact that award in damages is larger than is commonly given in such actions, is not a sufficient reason for setting aside the verdict, nor for reducing it in amount. It was the duty of the jury to fix the amount of damages suffered by the plaintiff, and if they did it upon the evidence, as they regarded it in its careful consideration without passion or prejudice, their duty in this respect, in the eyes of the law, was properly performed. The trial court heard all the testimony, saw the witnesses and their appearances in testifying. That court, as stated in the record, believed the parties had a fair trial by an impartial jury, with no apparent exhibition of passion, prejudice, or sympathy; for which reason, in the exercise of its discretion, it refused to set aside or disturb the verdict. It may be that this Court, had it been charged with the duty of passing upon the motion in the first instance, would have reached a different result; "but 'difference in judicial opinion' is not synonymous with 'abuse of judicial discretion.'" *Day* v. *Donohue*, 62 N. J. Law 380, 41 Atl. 934. The record does not show that in disposing of the motion, the discretion of that court was exercised on

grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable. We therefore think that no abuse of discretion appears. *Lincoln* v. *Central Vermont Ry. Co.,* cited above; *Murray* v. *Buell,* 74 Wis. 14, 41 N. W. 1010.

The defendant moved in arrest of judgment, and has presented in his brief, the question raised under three heads: (1) That the alleged promise set forth in the substitute count is a different cause of action from those set up in the original declaration; (2) that the substitute count is defective in that it does not allege that the promise was in writing; and (3) that the verdict was general with nothing to show on what count the damages were assessed.

In overruling this motion, (to which defendant excepted), the court said it could not say that the different counts are for different causes of action; that they allege the same breach, at the same time.

[27]   The time of the promise is alleged under a *videlicet* in each of the four counts contained in the declaration at the time of the trial; and since, as before observed, time does not constitute a material part of the contract, a promise made at any time other than the time alleged could properly be proved.

[28-30]   The allegations in each count show in fact or in legal effect, a mutual promise to marry within a reasonable time. None of the counts show that plaintiff ever requested performance. If the declaration in an action of this kind should generally so allege in order to set forth a breach and cause of action when the time of performance is by the parties left indefinite, as we think it should, the necessity therefor was obviated in this instance by allegations showing that the defendant has put it out of his power to perform, by marrying another. There being no such request of performance alleged in any of the first three counts, we think the contract shown in those counts, as well as that shown in the fourth count, was in law continuous until the time of the alleged breach by defendant, at which time, not when the original promise was made, the cause of action accrued. *Crossett* v. *Brackett,* (N. H.), 105 Atl. 5; *Burnham* v. *Cornwell,* 16 B. Mon. (Ky.) 284, 63 A. D. 529; *Caines* v. *Smith,* 15 M. & W. 189; 4 R. C. L. 153, § 11. When these parties once promised to marry each other, repetitions of that promise on different occasions thereafter, regardless of the number of times, were but ratifications of the first one, and constituted no new

contract. There was but one contract, and that was the one created by the original promise. There was but one breach, and that was the one alleged in all the counts. *Clement* v. *Skinner,* 72 Vt. 159, 47 Atl. 788; *Garmong* v. *Henderson,* 112 Me. 383, 92 Atl. 322. It follows that all the counts are for the same cause of action, and that the first assignment in the motion in arrest is not sustained.

[31] In discussing the second ground of the motion, defendant recites in his brief, some of the evidence for the purpose of showing that the promise was one not to be performed within one year, and so required by the statute of frauds to be in writing. But a judgment is never arrested except for matters apparent of record. *Trow* v. *Thomas,* 70 Vt. 580, 41 Atl. 652. And the testimony is no part of the record for this purpose, even thought it be a part of the bill of exceptions. *Baker* v. *Sherman & Miller,* 73 Vt. 26, 50 Atl. 633.

[32] It is unnecessary to decide whether mutual promises to marry are covered by the statute of frauds (see Browne St. Frauds, [5th ed.], § 215a; *Lewis* v. *Topman,* 90 Md. 294, 45 Atl. 459, 47 L. R. A. 385), for, if they are, the substitute (fourth) count shows a contract which might, by its terms, have been fully performed within one year, and so not void by the statute, although it in fact extended beyond that time. *Sherman* v. *The Champlain Transportation Co.,* 31 Vt. 162; *Blanchard* v. *Weeks,* 34 Vt. 589; *Warner* v. *Texas & Pacific R. Co.,* 164 U. S. 418, 41 L. ed. 495, 17 Sup. Ct. 147.

The third ground of the motion is based on the theory that the counts are for different causes of action. However, in view of our holding to the contrary, the defendant's position in this respect is untenable.

*Judgment affirmed as of the date it was rendered by the county court.*