STATE *v.* PETER W. LONGE

January Term, 1922.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 9, 1922.

*Criminal Law—Photographs of Locus Criminis Admissible Notwithstanding Some Change in Conditions—Harmless Error —"Corpus Delicti"—Respondent's Voluntary Statements Prior to Arrest Held Admissible After Testimony That Death Was Caused by Criminal Agency—Lack of Evidence to Justify Conviction Cannot be Raised on Motion in Arrest of Judgment.*

1.   Photographs of the *locus criminis* were not rendered inadmissible as evidence, because some change had taken place in such place between the time the crime was committed and the taking of the photographs, as any change in conditions was open to explanation.

2.   Evidence by a witness for the State, in a homicide case, giving the result of tests made by him about five months after the killing, of the velocity of a river at points near the place where deceased's body was put therein and where it was found

floating, admitted upon assurances of the Attorney General that he would also show that the velocity of the river was substantially the same at the time of the crime as when the tests were made, which connection he failed to make, while error, was harmless, as it could not have affected the jury to respondent's prejudice, and under Supreme Court Rule 7 the judgment below will not be disturbed.

3. "*Corpus delicti*" means the body of a crime, and, as connected with homicide, is made up of two elements: The death of a person, and that the death was produced through a criminal agency.

4. The voluntary statements of a respondent in a homicide case, made prior to his arrest, tending to implicate him in the killing of deceased, were admissible in evidence over objection that the *corpus delicti* had not been established, when prior to the receipt in evidence of such statements, the body had been identified and several physicians had testified that they had examined the body when taken from the water and at an autopsy performed the same day, that at those times they had observed a bruised and swelled condition of the temporal muscle on both sides of deceased's head, which condition, in their judgment, was produced before the body was submerged and was such as might have been caused by a blow or blows, and that the body entered the water while life was present.

5. The question of lack of evidence to sustain a verdict of murder in the second degree, on the ground that such evidence was only sufficient to justify a conviction of murder in the first degree, cannot be raised by motion in arrest of judgment, for the evidence, though referred to, is not a part of the record, to which the Court is confined in reviewing the ruling on such a motion.

INDICTMENT for murder in first degree. Plea, not guilty. Trial by Jury, March Term, 1921, Rutland County, *Moulton, J.,* presiding. Verdict, guilty of murder in the second degree. The respondent excepted. The opinion states the case. *Exceptions Overruled.*

*William H. Preston* for the respondent.

*Frank C. Archibald,* Attorney General, and *Charles E. Novak,* State's Attorney, for the State.

WATSON, C. J.  The respondent was tried under an indictment charging him with the murder in the first degree, of Owen Hayes at Fair Haven, on October 1, 1920, and was convicted of murder in the second degree.

Owen Hayes of Fair Haven, a man fifty-six years of age, suddenly disappeared on the evening of the day above named, and his body was found in the Castleton River in the village of Fair Haven on the 12th day of the same month.

[1]   On March 19, 1921, nine photographs were taken, by the procurement of the State's Attorney, of the *locus criminis.* These photographs, being offered in evidence, were received subject to exception solely on the ground that they were not admissible unless followed by evidence tending to show the conditions, when they were taken, were the same as on October 1, when the alleged crime was committed.  The court ruled that the fact of some change in the premises between the time of the occurrence and the time of taking the photographs did not operate to exclude the latter as evidence.  There was no error in this ruling. Any change in the conditions was open to explanation.  *Aldrich* v. *Boston & Maine R. R.,* 91 Vt. 379, 100 Atl. 765.

[2]   ·Exception 2 raises a similar legal question.  One Strobell, a civil engineer, was employed by the State to make a plan of that part of the village of Fair Haven, where the crime was supposed to have been committed.  For this purpose he visited the *locus criminis* and made observations and measurements on two or more days immediately following the middle of March, 1921.  He was called by the State as a witness, and in connection with his testimony the plan made by him was introduced in evidence as an exhibit.  Having testified that on March 22nd he made tests for the purpose of determining the velocity of the flow of the water of Castleton River a short distance below where the body of Hayes, by the tendency of the State's evidence, was put into the river, and again a few rods above where it was found floating in the stream twelve days later, the witness was permitted to testify what he determined the velocity to be at the time he made the tests.  This evidence was received subject to exception on the ground that it would not show what the conditions were on the previous October 1st, when the crime was committed.  Thereupon the Attorney General stated that evidence would be offered to show that at the time the crime was committed the water was flowing at substantially the same velocity as when

the tests were made. The evidence was received on condition
that such connection be made. The respondent says the prose-
cution failed to do this, and so the reception of the evidence in
question was error. There is no disagreement with this conclu-
sion of law; but the State says the error was harmless. With
this we quite agree. It is hardly conceivable that evidence of
the velocity of the water on the 22nd day of the spring month of
March, standing alone, would affect, to the respondent's preju-
dice, the minds of the jurors as to the velocity on the 1st day
of the fall month of October, approximately five and two-thirds
months before. We therefore fail to believe that the error in-
juriously affected the rights of the parties. See Rule 7, Supreme
Court (99 Atl. viii).

[3, 4]   Exceptions 3, 4, 5, and 7 are grouped together by
respondent's counsel, as raising the question as to the admis-
sibility of evidence of voluntary statements made by the re-
spondent prior to his arrest, tending to implicate him in the
crime for which he was later indicted and then on trial. The
ground of the exception was, that any statement he may have
made would not be admissible at the time these were offered, for
the *corpus delicti* of the crime charged had not been established.

At common law—we have no statute on the subject—*corpus
delicti* means the body of the crime, and as connected with homi-
cide is made up of two elements, first, the death of a person, and
second, that the death was produced through criminal agency.
7 R. C. L. 743-745; *People* v. *Benham,* 160 N. Y. 402, 425,
55 N. E. 11. As to the first element, the uncontroverted evidence
showed the fact of a sudden and unexplained disappearance of
Owen Hayes, in the evening of October 1, 1920, and that a dead
body, identified as his, was found October 12th, floating in Castle-
ton River, in the village of Fair Haven, partially decomposed
and bearing indications of having been in the water from about
the time of his disappearance until it was thus found. So far
the respondent makes no question, his claim of failure of the
State to establish the *corpus delicti* being asserted in argument
exclusively as to the second element, which we proceed to con-
sider.

Immediately after the body was taken from the water, an
examination of it was conducted by Dr. J. H. Carty of Fair
Haven, and later in the same day an autopsy was performed by
Drs. Stone and Whitney of the State Laboratory, Dr. Carty

being present.  Dr. Carty testified to having the clothing removed and then examining all parts of the body for marks of violence and fracture of bones; that he did not find any fracture of the bones, but there was much swelling and discoloration about the temples, face and neck; that on dissecting the skin from the top of the head and temples and parts of the face, he discovered a swelling of the muscles and tissues over the temples, especially on the left side, with considerable fullness of the blood-vessels and exudation of the serous portions of the blood; swelling about the tissues of the face and also much discoloration of the neck, down to the collar bone or a little past; that in his judgment the conditions he observed as to the muscles over the temple and about the head, would not have resulted or been occasioned after death.

Dr. Stone testified to finding in the autopsy what was apparently evidence of bruising of the muscle above the ear, the temporal muscle on both sides of the head, and that the condition found in this respect was such as might have been produced by a blow or blows; that in his judgment the body was submerged in the water while life was present; that he discovered no diseased condition of any of the organs; that in a general way, tissues that are bruised decompose much more readily than those which are not bruised, and such is the rule; that the marked decomposition around the head of Hayes bore the indication that it was bruised before being submerged in the water; and that in his judgment the death of Hayes was not caused by any violence, but was caused by drowning.

The testimony of Dr. Whitney agreed substantially with that of Dr. Stone in the respects above stated.  In addition thereto, Dr. Whitney testified concerning the bruises about the head that the tissues had probably been bruised so the fluids had exuded somewhat from their natural channels, and that such bruising and the exuding of the blood in the tissues, were probably produced during life.

Dr. Carty further testified that from the examination he made of the body, and from what he had testified in court, he doubted that Hayes met his death by drowning; that he was led to his belief in this respect by discovering the swelling of the tissues about the temples, the face and the neck and the discoloration; that he would not expect such condition to exist by the

body being submerged in water for the length of time this one was.

It was after the three doctors had testified as stated above, that the statements of the respondent were offered in evidence.

The statements shown to have been made by him at different times before his arrest, varied. At first he stated in effect that on the night in question he and three accomplices (naming them), for the purpose of robbing Hayes of money which he was supposed to have on his person, watched and followed him to, or managed to meet him at, a certain place in the village of Fair Haven, in a street running parallel with Castleton River, at which place one of his accomplices (naming him), either with his fist or with a club, struck Hayes down; that they then robbed him of what money they found on his person, and put his body by the side of some bushes on the bank of the river, one of the participants in the crime to put it into the water later. After making this statement several times, the respondent changed his story by stating that the three accomplices were strangers to him, not the men at all whose names he had previously given. In other respects the two statements did not materially differ. The second story he told several times, and on different occasions. Still later he stated that he himself killed Hayes. While in the trial of the case, taking the stand and testifying in his own behalf, he said his previous statements, shown in evidence, to the effect that he had to do with the commission of the crime were all lies, that he was not in any way implicated in the crime and knew nothing about it.

The testimony of the doctors, showing the bruised and swelled condition of the temporal muscle on both sides of the head of the deceased, when the body was examined immediately after it was taken out of the water, and at the time of the autopsy, and that in their judgment such condition was produced before the body was submerged in the water, and that the condition found in this respect was such as might have been produced by a blow or blows, and that the body entered the water while life was present, was corroborative of the statements of the respondent to the effect that the death of the deceased was produced through criminal agency. The evidence showing such statements was therefore properly received. *State* v. *Blay,* 77 Vt. 56, 58 Atl. 794; 13 R. C. L. 739, par. 43.

Exception 9. In disposing of this exception nothing more need be said than that the statements in evidence, as made by the respondent, showed that the motive for the murder of Hayes was robbery from his person.

[5]   Exception 10. The sole ground of the motion in arrest of judgment was that there was no evidence in the case to sustain a verdict of murder in the second degree; since on the evidence a conviction could be had only for murder in the first degree. There was no error in overruling this motion. The question of the lack of evidence to sustain a verdict cannot be raised in this way; for the evidence, though referred to, is no part of the record to which we are confined in reviewing the ruling on such a motion. *Dyer* v. *Lalor*, 94 Vt. 103, 109 Atl. 30; *State* v. *Shappy*, 79 Vt. 306, 65 Atl. 78; *Montpelier & Wells River R. R.* v. *Macchi*, 74 Vt. 403, 52 Atl. 960.

*Judgment that there was no error in the proceeding below and that the respondent take nothing by his exceptions.*