## Lyman Noble v. Delaware & Hudson Railway Co.

[453 A.2d 1109]

No. 536-81

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

*Richard J. Wright,* Poultney, for Plaintiff-Appellee.

*Sargent & White,* Morrisville, for Defendant-Appellant.

**Underwood, J.** This action relates to the upkeep of a fence along the common border of the plaintiff landowner's property and the defendant railroad's property. The obligation of

railroad companies operating in Vermont to maintain good and sufficient fences along their rights of way has been a matter of statute for more than one hundred and thirty years, *Davis* v. *Central Vermont Railway*, 88 Vt. 460, 461, 92 A. 973, 973 (1915) (citing 1849, No. 41, § 44), and is now governed by 30 V.S.A. chs. 33 and 45. The authority to supervise disputes coming under these chapters was vested in the Public Service Board until 1975, when it was transferred to the Transportation Board (hereinafter the Board) by 3 V.S.A. § 3104(a) (3) (1975, No. 120, § 1). It is under that authority that the Board first heard this dispute.

As a result of the hearing the Board made findings and issued an order requiring the defendant to repair 1700 feet of fence. The defendant then appealed to the Washington Superior Court, where the decision in favor of the plaintiff was affirmed. The defendant now appeals to this Court, contending that (1) the Board was without jurisdiction to hear or entertain the plaintiff's complaint, and (2) the statutory maintenance requirement imposed on railroads violates its rights under the Equal Protection Clause of the United States Constitution. We disagree with both of the defendant's contentions and affirm.

The Board found that it had jurisdiction to hear plaintiff's complaint pursuant to 30 V.S.A. § 1480 or 30 V.S.A. § 806. The former is a part of 30 V.S.A. ch. 45. The latter is a part of 30 V.S.A. ch. 33. Defendant argues that neither chapter confers jurisdiction upon the Board to hear said complaint.

The applicable sections of chapter 45 are 30 V.S.A. §§ 1474 and 1480. Section 1474 reads, in part, as follows:

> A person or corporation owning or operating a railroad shall construct and maintain on the sides of its road, when completed and in running order, a good and sufficient fence . . . .

According to the defendant, this section is purely substantive in nature, since it contains absolutely no procedural language. It contends that the procedural directive concerning matters pursuant to § 1474 is § 1480, which permits "[a] person through whose land a railroad passes" to make a complaint to the Board if "aggrieved by the neglect or default of a railroad corporation in constructing or maintaining fences, cattle

guards or farm crossings . . . ." Defendant argues that this section allows an adjacent owner to make complaint to the Board only if the railroad goes "through," i.e., bifurcates, his lands. In the instant case the railroad does not pass through the plaintiff's property. Rather, it passes exclusively alongside of it. The defendant submits, therefore, that § 1480 specifically fails to confer jurisdiction upon the Board to hear plaintiff's complaint.

The applicable sections of chapter 33 are §§ 801, 806, and 807. Section 801 requires the Board to keep itself informed as to the condition and safety of all railroads and to see to it that they comply with the laws governing their operation in this state. Section 806 gives the Board jurisdiction in all matters respecting "[t]he construction and maintenance of proper fences, cattle guards and farm crossings." Section 807 provides that the Board's jurisdiction can be invoked on its own initiative, by petition of the attorney general, the state's attorney of the county, or ten or more freeholders, or in such other ways as the law may specifically provide. The petition in the instant case was brought by the plaintiff individually. The defendant contends that since § 807 does not include individuals in its list of those who may commence a proceeding under § 806, the Board is without jurisdiction to hear plaintiff's complaint under this section.

In construing statutes, the intent of the legislature must be ascertained. *Lomberg* v. *Crowley,* 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980). Although the general rule in making this ascertainment is that the plain meaning of the statutory language will control, it is the policy of this state to avoid statutory construction that will lead to irrational results. *State* v. *Tierney,* 138 Vt. 163, 165, 412 A.2d 298, 299 (1980). We therefore reject defendant's strict interpretation of the above statutes, because it would lead to such results.

We turn first to the defendant's argument regarding 30 V.S.A. ch. 45. Section 1474, which pertains to the duty of railroads to construct and maintain fencing along its rights of way, clearly demonstrates a legislative intent to protect persons whose property adjoins or abuts that of the railroad. *Town of Fairlee* v. *Boston & Maine Corp.,* 127 Vt. 215, 216–17, 244 A.2d 53, 54 (1968). To construe § 1480 as denying an

adjacent landowner the right to petition for redress would create a right without a remedy. This would clearly frustrate the legislative purpose of the statutory scheme and produce an irrational result. Therefore, we hold that 30 V.S.A. § 1480 allows any person whose property adjoins a railroad right of way, regardless of whether or not the landowner's property is bifurcated by the right of way, to petition the Board for redress when aggrieved by the neglect or default of the railroad in constructing or maintaining fences.

■■ In any event, even without our holding that 30 V.S.A. § 1480 was intended to protect all adjacent landowners, the Board's jurisdiction extends to the situation about which the plaintiff complains. As we stated in *Town of Fairlee* v. *Boston & Maine Corp.*, *supra*, the Board's jurisdiction over railroads under 30 V.S.A. § 801 et seq. is broad enough so that once a complaint of neglect of duty is brought to its attention, by whatever means, it retains that jurisdiction. *Id.* at 218, 244 A.2d at 55. In *Town of Fairlee*, this Court held that the plaintiff town, although not specifically given standing to complain under 30 V.S.A. § 807, nevertheless properly invoked the Board's jurisdiction.

> In a matter over which the commission [now the Board] has jurisdiction any person or corporation that claims to be injured by the unlawful action or neglect of those in operation or management of a railroad, may bring his cause for complaint before the commission. And while the town is not given specific standing, such as that afforded to state's attorneys and the attorney general, it is an entirely adequate source of complaint. Once the complaint was before the regulatory agency, it was called upon to investigate the charge of non-compliance with the public service law.

*Id.* It is clear, therefore, that the Board properly exercised its authority in hearing plaintiff's complaint.

The defendant's second contention, simply stated, is that the Equal Protection Clause of the United States Constitution prevents the State of Vermont from requiring railroads to maintain fences along common boundaries, without requiring trucking companies to maintain fences along highways. The

defendant does not claim that it is being treated any differently than other railroad operators. Rather, it maintains that since the trucking industry does not have a similar duty to construct and maintain fences, the railroad industry as a whole is being denied equal protection.

The applicability of the Equal Protection Clause to proceedings of this sort was first expressed by the United States Supreme Court in *Missouri Pacific Railway* v. *Humes*, 115 U.S. 512 (1885). In *Humes*, the Court held that "[t]here is no evasion of the rule of equality where all [railroad] companies are subjected to the same duties and liabilities under similar circumstances." *Id.* at 523. The fact that today other potentially harmful activities besides railroads exist within the state, such as trucks travelling on public highways, does not diminish the state's interest in imposing duties of care on railroad operators. As the United States Supreme Court held in *Railway Express Agency* v. *New York*, 336 U.S. 106 (1949), "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Id.* at 110.

The instant case does not involve a suspect class or a fundamental right. Therefore, the classification must be upheld if it serves any of the purposes that are conceivably behind the statute. *Pabst* v. *Commissioner of Taxes*, 136 Vt. 126, 132–33, 388 A.2d 1181, 1184–85 (1978). Singling out the railroad industry and imposing on it the duty to construct and maintain fencing is reasonable and fair. As an industry fulfilling a public service and possessing government regulated monopolistic powers, railroads have historically been required to perform special duties in the public interest. *Davis* v. *Central Vermont Railway, supra,* 88 Vt. at 461, 92 A. at 973; *Town of Fairlee* v. *Boston & Maine Corp., supra,* 127 Vt. at 216, 244 A.2d at 54. This is only proper, since railroads have received by statute many special benefits, including the power of eminent domain. 30 V.S.A. § 1303. These considerations, along with the fact that any attempt to impose a similar fencing duty upon truck companies using public highways would present an administrative nightmare, justify the legislative distinction and different treatment. Thus, we hold that the

maintenance requirement imposed on railroads does not violate defendant's right to equal protection.

*Affirmed.*