BERT ALLEN RAINEY *v.* GRAND TRUNK RAILWAY COMPANY.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed July 31, 1911.

*Carriers of Passengers–Injury to Passenger—Implied Invitation to Board Train on Side Farther from Station—Evidence— Premature Closing of Vestibule Door—Negligence—Question for Jury—Foreign Law—New Trial—Discretion of Lower Court.*

In an action against a railroad company for injury to a passenger resulting from the closing of the vestibule door and the starting of the train while, in attempting to board the train, he was standing on the lower step leading to the vestibule, the evidence *held* to warrant the findings of an invitation, in the circumstances, by defendant to plaintiff to board the train on its side father from the passenger station at which it was standing, and that, under the law of the Province of Quebec where the accident occurred, it was negligence to shut the door and start the train while plaintiff was so on the step.

Where at a passenger station a passenger attempted to board a regular passenger train through an open vestibule door whence he had just seen passengers alighting, and, just as he mounted the lower step leading to the vestibule, the door closed and the train started, it may properly be inferred, in the absence of evidence to the contrary, that the door was closed by some one connected with the operation of the train.

Where the pleadings present an issue of fact as to what a foreign law is, that question is for the jury, where its determination involves the construction and effect of written statutes and judicial opinion, the opinion of experts touching the meaning and legal effect of the same, together with the common law, proved by experts as having a material bearing, and, in the absence of statutory provisions found applicable, determinative of the question.

A defendant's motion to set aside a verdict in favor of the plaintiff as against the weight of the evidence is addressed to the discretion of the trial court, and the question thereby presented is, not whether the preponderating weight of all the evidence is in favor of plaintiff, but whether the evidence, giving it the greatest probative force in favor of plaintiff

to which according to the law of evidence it is fairly entitled, is sufficient to justify the verdict, as it is for the jury to construe the evidence and determine its weight.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1910, Franklin County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant moved to set aside the verdict as "being excessive, and also not warranted by the facts in the case and the law applicable thereto." Motion denied, to which defendant excepted.

Plaintiff's evidence tended to show that after the accident he was allowed to lie on the ground for fifteen or twenty minutes, when defendant, by its servants, assumed control of him, took him into the baggage room, where he remained for about thirty minutes whereupon he was removed to a hospital in St. Johns, at the request of one of the defendant's district medical officers; that no effort was made to stop the flow of blood from plaintiff's injured leg, nor to relieve his pain therefrom; that after his removal to the hospital plaintiff's injured leg was amputated a little below the knee. Defendant's evidence tended to show that the operation was done that night, while plaintiff's evidence tended to show that it was not done till after ten o'clock the next morning, and that it was not properly done; that within twelve hours thereafter plaintiff was again chloroformed, the wound undressed, and certain arteries tied in order to stop the flow of blood; that shortly after he recovered from this, and at the request of defendant's said district medical officer, plaintiff was carried on a stretcher by two men through the streets of St. Johns to the passenger station, and placed on the station platform where he remained twenty or twenty-five minutes, when a railroad ticket was purchased and placed in his cap, and he was transferred to a baggage car wherein he was carried, unattended, to Montreal, a distance of about thirty miles; that at Montreal he was taken from the car and carried in an ambulance to Notre Dame Hospital; that during that night the remainder of his soiled clothing was removed, and his body well washed for the first time after his injury; that then blood was discharging from the injured leg, and that new dress-

ings were applied; but that blood poisoning followed, so that on May 10, 1909, the third day after the accident, there was "abundant suppuration, imperceptible pulse, patient vomits, stimulants ordered every two hours, artificial serum injection"; that on May 12, 1909, plaintiff's injured leg was again amputated, "amputation of left thigh at the inferior third"; that plaintiff was discharged from this hospital on June 5, 1909.

Defendant's fifth, sixth, and seventh requests to charge were as follows:

"Fifth. That if the jury find that the plaintiff's fall from the train was due to the slamming of the vestibule door in his face, he cannot recover for the reason that he failed to produce evidence tending to prove that the closing of the door was either through positive act or negligence, the act of a servant of the defendant engaged in the performance of his duty.

Sixth: That if the jury find that no act of the defendant or its servants was responsible for the crushing of the plaintiff's foot, but find that the first actionable act of the negligence was the act of the surgeon or surgeons who treated the injury, the plaintiff cannot recover.

Seventh: That when the defendant's servants undertook to procure medical aid for the plaintiff their duty, in this respect, was fully performed if they acted with the prudence of an ordinarily prudent man in selecting and summoning a surgeon and gave the injured man such shelter and care as the circumstances would permit until the surgeon took charge of him; that for anything in the progress of his illness thereafter arising from the method of surgical treatment, the defendant was not responsible and the plaintiff cannot recover in this action."

*Leroy L. Hight* for the defendant.

*M. H. Alexander* for the plaintiff.

WATSON, J. The exceptions on which the case is presented by the defendant's brief are to the non-compliance with the fifth, sixth, and seventh requests to charge, and to the overruling of the motion to set aside the verdict, on the ground that it was not warranted by the facts in the case and the law applicable thereto.

The accident occurred at St. Johns, in the Province of Quebec, hence the liability of the defendant depends upon the law of that province. By agreement of counsel principles of Quebec law were submitted to the jury without controversy as follows: (1) That by section 1053 of the Code, "Every person capable of discerning right from wrong, is responsible for the damage caused by his fault, by positive act, imprudence, neglect or want of skill." (2) That the word "person", as there used, includes bodies politic and corporate. (3) That contributory negligence on the part of the plaintiff does not defeat his right of recovery, unless such negligence is the proximate and determinative cause of the injury, but such negligence goes in mitigation of damages. (4) That when the negligence of the plaintiff is the proximate and determinative cause of the injury, he is barred of recovery. (5) That negligence on the part of the plaintiff is a matter of defence.

Some other questions respecting the law of that province were in dispute.

In support of the motion to set aside the verdict the defendant states as its position, that to entitle the plaintiff to recover, the burden rests upon him "to show by fair preponderance of evidence—(a) that the defendant failed to afford the plaintiff free and unobstructed entrance by the doorway through which he attempted to enter the car, and that such failure was the proximate cause of the injury; or (b) that after his injury the defendant assumed such care of him as to impose upon it a continuing duty to follow him through his treatment to his recovery, and that such duty was of a sort to make the defendant responsible to the plaintiff for any negligence, which must be shown, on the part of the surgeons who treated him."

It appeared that the defendant's station at St. Johns is on the south side of the railroad tracks of which there are several, and that the city is on the north side; that numbering the tracks in their order in front of the platform of the station, when passenger trains meet at that place the one from Montreal going east takes No. 1 track, and the one from the east going to Montreal takes No. 2 track; that the latter track has no platform accommodation on either side; that leading from the city to the station is Jacques Cartier street running approx-

imately at right angles with the track; that defendant's train No. 3, it being a vestibule train throughout and known as the "New England States Limited", bound for Montreal, was due at St. Johns by schedule at 9:20 in the evening. The plaintiff's evidence tended to show that on the day of this injury he and a traveling companion, on their way from St. Albans to Montreal, stopped over one train at St. Johns, the plaintiff never having been there before; that during their stay there they went about the city more or less for amusement and refreshments, and when at the National Hotel on Jacques Cartier street about three hundred yards from the station they heard No. 3 train whistle, and thereby knowing it was near they ran down that street to take the train for Montreal; that when they were about two hundred yards from the station the train came in and stopped on track No. 2, and at the same time track No. 1 was occupied by a train standing on it in front of the station, going east; that as the plaintiff came nearer train No. 3, he noticed a number of people getting off the train on the side next to him, one of the vestibuled doors being opened; that knowing he and his companion must hurry in order to take that train he attempted to get aboard through the same open vestibule door where he had seen people alighting; that the train was then standing still, but just as he got onto the lower step the train started and the vestibule door, which was down next to the lower step, was shut; that he tried to push the door open, but could not, and the steps being wet from rain his foot slipped off and his hand slid down on the handles, and he was dragged some thirty or forty feet, when he had to let go, and was injured, his left leg being run over and cut off just above the shoe; that when Jacques Cartier street was blocked by a train and especially from the beginning of summer till the beginning of autumn people generally got off and on the train on its north side, the side next to the city, because to go to the station platform it was necessary to make a turn and cross the track. That such was the custom was not denied by the defendant's evidence, but it did deny that any vestibule door on the north side of the train was open on the occasion in question, and thus inferentially it denied that the accident occurred as the plaintiff's evidence tended to show. In view of such custom known to and permitted

by the defendant, the jury might say upon the evidence showing what took place at the time in question that the general custom was followed: passengers got off the north side of the train, and that the plaintiff, seeing this, was justified in looking upon it as giving him permission to get aboard there,—in other words that it constituted an invitation to any one on that side desiring to take the train to do so at that place; and that under the provincial law in evidence it was negligence in the defendant to shut the vestibule door and start the train when the plaintiff was yet on the lower step in getting aboard, thereby obstructing further progress by him and resulting in his injury. In *Keating* v. *New York Cen. & H. R. R. Co.*, 49 N. Y. 673, the plaintiff attempted to board defendant's train at Niagara Falls. The passenger depot was on the south side of the track and passengers usually got on and off there; but passengers residing in the part of the village where plaintiff lived were in the habit of getting on and off upon the north side of the track, to the knowledge of, and without objection by, the defendant's employees. When the plaintiff stepped upon the steps of the car the train was standing still, but without signal or notice, and without any examination by those in charge to ascertain whether anyone was getting on or off, the train started with a violent jerk, throwing the plaintiff from the car, by reason of which she was injured. The court below overruled the defendant's motion for a non-suit based upon the ground that no negligence on the part of the defendant was shown, and that the negligence of the plaintiff contributed to the accident. It was held that the motion was properly denied, and that there was no error in submitting the question of negligence to the jury. See also *Blackwell* v. *O'Gorman Co.* (R. I.) 49 Atl. 28. On the question of whether upon the evidence the jury might consider that there was an invitation by the defendant to passengers on the north side of the train to board it at the place of the open vestibule door, see *Chicago, etc. R. Co.* v. *Drake*, 33 Ill. App. 114; *Missouri Pac. Ry. Co.* v. *Long*, 81 Tex. 253, 16 S. W. 1016, 26 Am. St. Rep. 811; *Delaware, etc. R. R. Co.* v. *Trautwein*, 52 N. J. L. 169, 19 Atl. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442; *Baltimore, etc. R. R. Co.* v. *Kane*, 69 Md. 11, 13 Atl. 387, 9 Am. St. Rep. 387.

It is said, however, that there was no evidence as to who shut the door. In the same way it might be said that there was no evidence showing who started the train. Yet on the evidence there can be no doubt that the train being run over the defendant's road was in charge of defendant's employees. The verdict established the fact that the vestibule door was opened and passengers alighted on the north side as testified by the plaintiff; also that the door was shut and the train started at the same time. If the door was not closed by an employee upon the train, the means of proving it were peculiarly within the knowledge and power of the defendant, and in the absence of any evidence to the contrary the jury might reasonably infer that the door was closed by some one connected with the operation of the train. *State* v. *Nulty,* 57 Vt. 543; *Selma, Rome and Dalton R. Co.* v. *United States,* 139 U. S. 560, 35 L. Ed. 266, 11 Sup. Ct. 638; *Harris* v. *White,* 81 N. Y. 532.

This disposes of the defendant's position (a), under its motion to set aside the verdict, and also in effect of the exception to the non-compliance with the fifth and sixth requests.

The third count alleges among other things in short that it was the duty of the defendant under the law of the Province of Quebec, the plaintiff having been injured by the defendant, to take proper and suitable care of the plaintiff, to see that he was removed to a suitable and proper place for care and treatment, that his injuries were properly, skillfully, and suitably treated, cared for, dressed and attended to, that his foot was properly, skillfully and suitably amputated, and that he was relieved in so far as was possible and reasonable, from all pain and suffering occasioned by the injury, which duty the defendant failed to perform, etc. Respecting the negligence here alleged and the consequent right of recovery, the defendant's contention is confined to the law upon which the claimed liability is alleged to rest. To prove such law the plaintiff used as an expert witness an attorney at law from that province. This witness gave testimony concerning the meaning and legal effect of certain sections of the Code read by him; also concerning a certain decision by the appellate court of the Province of Quebec, a quotation from which he read, as showing that a section of the Code referred to by him was applicable to such a statement of

facts as were being considered in the case at bar; also concerning the unwritten or common law as applicable to this branch of the case if the Code was not; and further testified in effect that while in his opinion the defendant was not under any legal obligation to take control of the plaintiff after he was injured, it having done so there was a continuing duty by law resting upon it to put him in a good place, send him to a hospital, and see that he was properly and suitably treated and cared for, according to the nature, extent, and requirements of his injuries. On the other hand, the defendant also used as an expert witness on the same question an attorney at law from that province who testified that there was no particular section of the laws of the Province of Quebec referring to such responsibility, and that in his opinion there was no obligation in law on the part of the defendant to take charge of the plaintiff, but if it did take charge of him, if it picked him up when found injured, then by the common law the defendant was bound to do for him what would usually be done by other people: take him to a physician and try to give him the best care obtainable in the locality; and that when the defendant had turned the plaintiff over to a physician whom it deemed competent, and the physician had assumed charge and direction of him and his subsequent care, the defendant had done all the law required, and it had no further responsibility. Here was a conflict of evidence, admitted without objection, on a material question of the provincial law put in issue by the pleadings, and the defendant, by its seventh request, asked the court in effect to hold as a matter of law that the law of the Province of Quebec in this respect was as claimed by the defendant and as testified by its expert witness. On exception to the refusal to comply with such request, the question of whether as the case stood the law of that province should have been so ruled is presented.

The question of what the foreign law was after it was proved as facts did not depend merely upon the construction and effect of a written statute or the interpretation of judicial opinion; it involved, as seen, the construction and effect of written statutes and of judicial opinion, with the opinions of expert witnesses touching the meaning and legal effect of the same, together with the common law proved by expert testimony as having a ma-

terial bearing upon the same question of liability and, in the absence of statutory provisions found applicable, determinative of this branch of the case. Clearly in these circumstances, the question of what the provincial law was, was a question of fact for the jury, and the non-compliance with the defendant's seventh request was not error. *Morrisette* v. *Canadian Pacific R. R. Co.*, 74 Vt. 232, 52 Atl. 520; *McLeod* v. *The Conn. & Pass. Rivers R. R. Co.*, 58 Vt. 727, 6 Atl. 648.

In arguing position *b* under the motion to set aside the verdict, defendant's counsel makes no claim that the evidence given by the two expert witnesses in this respect was not to the effect here stated; but he says this Court should examine this evidence carefully, and if that given by the plaintiff's witness was manifestly illogical, unskillful and wrong, while that given by the defendant's witness was manifestly sound, reasonable and in accordance with the best methods of legal exposition, then the motion should prevail and a new trial be granted. Yet the motion was addressed to the discretion of the trial court, and it not being claimed that there was an entire failure of proof on the point now under discussion, this Court can only inquire whether there was an abuse of discretion by that court in overruling the motion. On this motion the question was not whether on all the evidence the preponderating weight was in favor of the plaintiff but it was whether the evidence in favor of the plaintiff, giving it the greatest probative force to which according to the law of evidence it was fairly entitled, was sufficient to support or justify the verdict. *Pleasants* v. *Fant*, 22 Wall. 116, 22 L. Ed. 780. It was the province of the jury to construe the evidence and determine its weight. Applying these principles, we cannot say that there was any abuse of discretion by the trial court in refusing to set aside the verdict.

*Judgment affirmed.*