CHARLES BELOCK ET AL. *v.* STATE MUTUAL FIRE INSURANCE COMPANY.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 2, 1934.

438

*Marvelle C. Webber, Vernon J. Loveland,* and *Christopher A. Webber for the plaintiffs.*

*Fred E. Gleason* for the defendant.

MOULTON, J. ██ ██ This is an action of contract upon a policy of fire insurance covering certain property owned by the plaintiff Belock and mortgaged to the plaintiff Crampton, the loss being payable to the latter as his interest might appear. The plea is that the fire was caused by the fraudulent act of Belock, in that he wilfully burned or caused to be burned the insured building. This defense was available as against both Belock, the mortgagor, and Crampton, the mortgagee (*Girard* v. *Vermont Mutual Fire Insurance Co.,* 103 Vt. 330, 334, 154 Atl. 666), but the burden of proving it was upon the defendant. *Cummings* v. *Connecticut General Life Insurance Company,* 101 Vt. 73, 85, 142 Atl. 82. The defendant moved for a directed verdict, but the motion was denied, subject to its exception. The jury returned a verdict for the plaintiffs, which the court, on de-

fendant's motion, set aside. Both plaintiffs and defendant have filed bills of exceptions, and there are two questions for determination: (1) Whether the court erred in setting the verdict aside, and (2) whether the court erred in overruling the motion for a directed verdict.

The motion to set aside was based upon five gounds, but the trial court granted it upon the first, second and fifth grounds, which were as follows: (1) For that the said verdict was contrary to any reasonable inference from all the evidence that the plaintiff Belock did not burn or cause to be burned the property for the insurance on which the plaintiffs seek to recover; (2) for that the verdict is contrary to the evidence, and not warranted thereby or by any reasonable inference to be drawn therefrom; (5) for that from the evidence and all reasonable inferences to be drawn therefrom there was nothing upon which reasonable men could differ and that the defendant was entitled to a verdict.

The distinction between a motion to set a verdict aside as against the evidence, and one based upon the ground that there is no supporting evidence is stated in *French* v. *Wheldon*, 91 Vt. 68, 69, 99 Atl. 232. In the former case, the motion is addressed to the discretion of the trial court, and its action thereon is not revisable unless it appears that there has been an abuse or withholding of discretion. *Butler* v. *Favereau*, 105 Vt. 382, 383, 166 Atl. 1; *Sargent* v. *Robertson*, 104 Vt. 412, 420, 160 Atl. 182; *Porter* v. *Fleming*, 104 Vt. 76, 82, 156 Atl. 903; *Robinson* v. *Leonard*, 100 Vt. 1, 11, 134 Atl. 706; *Temple et ux.* v. *Atwood*, 99 Vt. 434, 435, 134 Atl. 591; *Sharby* v. *Town of Fletcher*, 98 Vt. 273, 281, 127 Atl. 300. The rule is the same where the ground for the motion is that the verdict is contrary to the evidence, *Butler* v. *Favereau, supra; Paska et al.* v. *Saunders et al.*, 103 Vt. 204, 217, 153 Atl. 451; *Daniels* v. *Preston*, 102 Vt. 337, 339, 148 Atl. 285; *Temple et ux.* v. *Atwood, supra; Wellman, Admr.* v. *Wales*, 97 Vt. 245, 249, 122 Atl. 659. But where it is claimed that the verdict should be set aside because there is no evidence to support it a question of law is presented which is subject to review. *Shields et al.* v. *Vermont Mutual Fire Insurance Co.*, 102 Vt. 224, 255, 147 Atl. 352; *Nichols* v. *Lane*, 93 Vt. 87, 89, 106 Atl. 592. If there is any evidence fairly and reasonably tending to justify the verdict the motion cannot properly be granted. *Paska et al.* v. *Saunders et al., supra*, page 216

of 103 Vt. 153 Atl. 451; *Jacobs* v. *Loyal Protective Ins. Co.*, 97 Vt. 516, 527, 124 Atl. 848. The evidence must be taken in the most favorable light for the prevailing party, for the motion, in this respect, is the same in nature and substance as a motion for a directed verdict. *Twin State Fruit Corp.* v. *Kansas,* 104 Vt. 154, 157, 157 Atl. 831; *State* v. *Pierce,* 103 Vt. 383, 154 Atl. 675; *Paska et al.* v. *Saunders et al., supra; Shields et al.* v. *Vermont Mutual Fire Insurance Co., supra; Farnham & Sons, Inc.* v. *Wark,* 99 Vt. 446, 451, 134 Atl. 603.

■ ■ Of the three grounds for the motion in the instant case, the second called for the exercise of the court's discretion. The fifth is in substance that there was no supporting evidence. And so, as we construe it, is the first also, because the expression "that the said verdict was contrary to any reasonable inference from all the evidence," is equivalent to a claim that there was nothing in the evidence which justified the verdict. Of course, if the ruling can be sustained upon any one of the grounds, the judgment must be affirmed. If nothing appeared to the contrary, we would assume that the court acted solely, as a matter of discretion (*Parkhurst* v. *Healy's Estate,* 97 Vt. 295, 296, 122 Atl. 895; *Temple et ux.* v. *Atwood, supra*), but there is no room for such an assumption here, because the court specifically based its ruling upon all of the three grounds stated. Therefore, we consider the evidence as it bears upon each of the questions raised.

■ The burned building was the horse barn on the Belock farm, situated about a mile southerly of the city of Rutland. It was about 50 feet distant from the nearest part of the dwelling house, and was 80 feet long by 36 feet wide, with a slate roof, and sills 8 x 8, 6 x 6, and 5 x 5. The alarm was received at the fire station in Rutland at 9.10 p.m. on December 14, 1932, and by the time the apparatus reached the scene, the barn was all in flames. No one was about the place. The evidence on the part of the defendant was to this effect: When the firemen reached the farm, one of them broke open the front door of the house, which was apparently locked, and searched for any possible inmates. The heat was so intense that the paint on the side of the house next to the barn had commenced to blister, and a stream of water was directed against the house to prevent its burning. No one was found in the house, but on the cellar floor, on the side near the barn, there was a smouldering fire in

a rubbish pile, which had evidently been burning more fiercely, because the ceiling of the cellar directly above it was scorched and charred. Not far away there was a pile of inflammable material, two feet high, consisting of an egg crate, a pasteboard box, papers and rags, all saturated with kerosene oil, but not ignited. On the north wall of the cellar, on top of the stonework and under the beams supporting the house, were stuffed rags soaked in kerosene and extending for a distance of 20 feet. More rags soaked in kerosene were found in a similar position on the west wall. No window in the cellar was opened. Kerosene had been spilled on the floor of one of the rooms on the first floor. On the second floor, near the head of the stairs, the baseboard had been pulled off and saturated with kerosene and, behind a door, there was a place in the wall where the plaster had recently been knocked off, a lath pulled out and in the aperture there were rags soaked in kerosene. The plaster around the hole was wet with kerosene. A can containing a small quantity of kerosene was found in the attic and the floor was wet with the liquid. On the floor of one of the first floor rooms there was a liquid which burned with a blue flame when a lighted match was applied to it, and was apparently alcohol. On the morning of the day of the fire, Belock purchased five gallons of kerosene of which he used one quart in spraying his cows for lice, and one quart in filling two lanterns. About two weeks before that he had received, from the agent of the mortgagee, a demand for a payment upon the mortgage debt, which then amounted to $9,500. When Belock reached the farm on the evening of the fire, the barn was practically consumed, and there was evidence tending to show that he exhibited no surprise or curiosity, but went calmly into the house where he kindled a fire in a stove for the purpose of warmth. It was the theory of the defense that Belock intended and prepared to burn both barn and house; that he succeeded as to the former building, but failed as to the latter because there was no opening in the cellar, and so no draft for the fire he had kindled.

The plaintiff introduced evidence tending to show that Belock, his wife and one son were engaged in milking between five and six o'clock in the afternoon. The cow barn was some 600 feet from the house. At about six o'clock they went to the house, had their supper, and along with all the other children then at home, they went in their automobile to visit a friend who

lived about two and one-half miles away. On the way, they were joined by remaining child, a daughter who was employed in Rutland, and three of the sons stopped at a bowling alley where they worked as pin boys. The time of leaving the farm was about 20 minutes to seven, and they all returned shortly after 10 o'clock, while the fire was in progress. Two Italians, one named Frank Drury, and the other known only as Joe, had been intermittently occupying one of the first floor rooms in the house, for the purpose of manufacturing beer. There were two entrances to the room, one from the hallway, and the other from the yard, on the side next to the horse barn. It was upon the floor of this room that the liquid which burned with a blue flame was discovered. On the morning of the day of the fire, Belock ordered the two Italians off the premises, because they had not paid their rent, and one of them threatened that he would "get back at him." They departed that day taking a part of their apparatus with them, but leaving behind a three-burner oil stove, along with some other articles. They moved a large vat out upon the porch. There was an entrance to the cellar from the outside, and in both the horse barn and in the house there was personal property not covered by the policies in suit. Belock denied all knowledge of the fire or agency or participation in causing it. His evidence tended to show that one of the cellar windows was broken.

With the evidence standing thus, and taking it most favorably for the plaintiffs, it is clear there was a question for the jury, and, consequently, there was no error in the denial of the defendant's motion for a directed verdict. It follows that the granting of the motion to set the verdict aside, so far as the first and fifth grounds were concerned, was error. These rulings were upon questions of law, and, as we have seen, the issue was the same in each instance.

But whether the discretionary ruling, by which the verdict was set aside upon the second ground, should be sustained is another matter. The question is not precluded by the previous denial of the motion for a verdict. *Bradley* v. *Blandin,* 94 Vt. 243, 257, 258, 110 Atl. 309. That there is some evidence tending to support the verdict does not prevent the exercise of discretion in setting it aside. *Smith* v. *Martin,* 93 Vt. 111, 122, 106 Atl. 666. The plaintiffs insist that it cannot be said that the defendant's evidence preponderated over theirs, but the trouble

with this argument lies in the fact that it is not for us to say where the weight of the evidence lies, unless it is so clearly manifested that to hold otherwise would be an abuse of the trial court's discretion. We have no discretionary power in the matter. *Bradley* v. *Blandin*, 94 Vt. 243, 257, 110 Atl. 309. The question is not what we might have done in the circumstances, for "difference in judicial opinion" is not synonymous with "abuse of judicial discretion." *Dyer* v. *Lalor*, 94 Vt. 103, 116, 109 Atl. 30; *Temple et ux.* v. *Atwood*, 99 Vt. 434, 435, 134 Atl. 591. We do not upset a verdict merely because the evidence preponderates against it; in order that we may do so, it must appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis upon which it can stand. *Catto* v. *Liberty Granite Co.*, 101 Vt. 143, 146, 147, 141 Atl. 684. Conversely, the same rule applies also. ' We will not disturb a ruling by which a verdict has been set aside, as contrary to the weight of the evidence, merely because the evidence preponderates in its favor; to justify our interference it must appear that the evidence is so strongly in its favor as to leave no reasonable basis for a contrary verdict. We are bound . to indulge every reasonable presumption in favor of the ruling, bearing in mind that the trial court was in the better position to determine the question. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 152, 153, 130 Atl. 758.

 The plaintiffs stress the ill will of the evicted Italians, and their opportunity for revenge, and the fact that the testimony connecting Belock with the fire was circumstantial. But such evidence was admissible, and, if sufficiently persuasive, might establish the fact in issue. *Girard* v. *Vermont Mutual Fire Insurance Co.*, supra, page 335 of 103 Vt., 154 Atl. 666. It appeared without dispute that elaborate preparations had been made for an incendiary fire. Of Belock's purchase of five gallons of kerosene, only two quarts had been accounted for. He had been present upon the farm nearly all that day. The construction and size of the horse barn were such that a fire kindled before the time he left the premises might not have gained sufficient headway to be noticeable until the time the alarm was given. True, there is no presumption of wrongdoing; on the contrary, the presumption of innocence is to be reckoned with. It was, as the plaintiffs argue, unlikely that, on a cold December night, Belock would plan to render his

444

family homeless. But, again, there were the mortgage, the recent demand for payment, and the comfortable expectation of a sum of money from the insurance company, if the buildings should be burned. It is not inconceivable that he should prefer this way of escape from his financial obligation, even at the expense of his family's comfort, in spite of his denial.

 These circumstances, the weight to be given to them and the inferences to be drawn from them, were for the trial court to consider in passing upon the motion. We must presume that its discretion was exercised, since the law required it. *State* v. *Stacy,* 104 Vt. 379, 389, 160 Atl. 257, 747. It is enough for us to say that, all in all, the record does not show that the discretion of the court was exercised on grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable, without which no abuse of discretion is made to appear. *Temple et ux.* v. *Atwood,* 99 Vt. 434, 435, 134 Atl. 591; *Schlitz* v. *Insurance Company,* 96 Vt. 337, 342, 119 Atl. 513; *New England Box Co.* v. *Tibbetts,* 94 Vt. 285, 290, 110 Atl. 434.

*Judgment affirmed, and cause remanded.*