Arthur E. Lancour *v.* Herald and Globe Association.

May Term, 1942.

Present: Moulton, C. J. Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 6, 1942.

472

*George P. Drury* and *William L. Scoville* for the plaintiff.

*Fenton, Wing & Morse* for the defendant.

BUTTLES, J. This is an action in tort for libel which has been here before and was reported in 111 Vt. 371. By our previous decision it was held that the liability of the defendant had been

established, and the cause was remanded for trial upon the issue of damages only. The libelous publication appeared in the issue of Nov. 19, 1936, of the Rutland Herald, a newspaper published by this defendant. The article is reproduced in full at page 377 of the report above referred to and is here in evidence as Plaintiff's Exhibit No. 1. The second trial resulted in a verdict for the plaintiff for $2500. The issue of exemplary damages was submitted to the jury, but a special verdict was not requested or rendered and there was nothing to indicate what part of the general verdict, if any, was awarded as such damages. Prior to judgment the defendant moved to set aside the verdict and for a new trial. On Dec. 12, 1941, the court ordered that this motion would be granted unless the plaintiff, on or before Dec. 21, should remit the sum of $1000. from his verdict. No remittitur having been filed the court, on Dec. 29, granted the motion and ordered a new trial. On exceptions to both of the above orders the plaintiff comes to this Court before final judgment under the provisions of P. L. 2072.

The plaintiff apparently misinterprets the ruling of the court as to the nature of the motion, made at the hearing thereon. The court then said specifically: ''We will treat it as a motion to set aside and motion for new trial on the question of damages only.'' To this the defendant's counsel assented and plaintiff's counsel made no objection. The authority of the court to order an optional remittitur as an alternative to granting such a motion in a proper case, even when the damages are unliquidated, is not questioned, and there is nothing in the ruling referred to which precluded the court from making such an order. The plaintiff contends, however, that here the evidence and the law of the case did not warrant any interference with the verdict by the court.

The defendant's motion is based upon five stated grounds each of which attacks the alleged excessive amount of the verdict. The first ground of the motion is stated thus: ''That the amount of the verdict is greatly excessive and wholly unwarranted and unsupported by any evidence in the case.'' The other grounds of the motion are, in substance, that there is no evidence in the case fairly and reasonably tending to show that the plaintiff was entitled to punitive or compensatory damages, as defined by the

court's charge, in the amount of $2500; that the verdict in that amount is clearly based on guess, speculation and conjecture and not upon any competent evidence in the case; that the verdict in that amount was contrary to the instruction of the court that the verdict should be fair and reasonable, based upon a consideration of all the evidence in the case; that the amount of the verdict indicates beyond question that the jury was motivated in its rendition by passion and prejudice.

██ The court did not state on what ground the motion was granted or whether it ruled thereon as a matter of law or a matter of discretion. Under these circumstances if a discretionary ground was presented to the court it is our rule that we will presume that the ruling was made as a matter of discretion. *Parizo* v. *Wilson,* 101 Vt. 514, 523, 148 Atl. 856; *State* v. *Fairbanks,* 101 Vt. 30, 34, 139 Atl. 918; *Temple* v. *Atwood,* 99 Vt. 434, 435, 134 Atl. 591; *Parkhurst* v. *Healy's Estate,* 97 Vt. 295, 296, 122 Atl. 895; *Belock* v. *State Mut. Fire Ins. Co.,* 106 Vt. 435, 440, 175 Atl. 19. The claim that a verdict is excessive, at least when advanced as a separate ground for the motion, is addressed to the discretion of the trial court and its ruling thereon is not reviewable unless it appears that in its exercise that discretion was abused. *Dyer* v. *Lalor,* 94 Vt. 103, 114, 109 Atl. 30; *Jacobs* v. *Loyal Protective Ins. Co.,* 97 Vt. 516, 527, 124 Atl. 848; *Paska* v. *Saunders,* 103 Vt. 204, 217, 153 Atl. 451; *Rule* v. *Johnson,* 104 Vt. 486, 490, 162 Atl. 383; *Shields* v. *Vt. Mut. Fire Ins. Co.,* 102 Vt. 224, 255, 147 Atl. 352.

It is significant that each stated ground of the motion is based on the claim that the verdict was excessive. It is difficult to perceive how any ground not based on the amount of the verdict could have been tenable, since the issue of liability was *res judicata.* In this situation the question whether the court was warranted in ruling that the verdict was excessive becomes fundamental in considering whether it made a correct disposition of the motion on any ground. That a discretionary ground was here presented to the court is suggested by the language of the first clause of the first ground and by the limited scope of the trial. That the parties treated the motion as raising a discretionary question and that the court so understood and ruled appears from the record of the hearing on the motion. The plain-

tiff's counsel remarked that the real complaint was that the damages were too large and said: "I am willing to concede, if it can be written into the record, that this is to be regarded as a motion to reduce damages on the ground that they are excessive and on the grounds stated here." The court then made the statement quoted above that it would treat the motion as one to set aside and for new trial on the question of damages only. In acceding to this the defendant's counsel stated that "the motion is based both on the fact that there is no evidence fairly and reasonably tending to support a verdict of the size rendered by the jury." He then referred to the claimed extent of the evidence and concluded by saying: "I believe that evidence is insufficient and doesn't warrant or support a verdict of this size."

██ Since the proximate and necessary consequence of a defamatory publication is injury to the feelings, reputation or business of the person defamed, compensation for such injury is recoverable as general damages. 33 Amer. Jur. 193, Sec. 204; *Scott* v. *Times-Mirror Co.,* 181 Cal. 345, 184 Pac. 672, 12 A. L. R. 1007, 1021; *Craney,* v. *Donovan,* 92 Conn. 236, 102 Atl. 640, L. R. A. 1918C 96, 98. When the defamation is actionable per se the plaintiff can recover general damages without proof of loss or injury, which is conclusively presumed to result from the defamation, but he is not required to rely solely upon the implications that are applicable and may present any evidence of a competent character that is authorized by his pleadings, for the purpose of showing the extent of the injury and the amount of the compensation that should be awarded. 33 Amer. Jur. 263-265, Secs. 282 and 283; *Nott* v. *Stoddard,* 38 Vt. 25, 30, 88 Amer. Dec. 633.

The evidence here discloses that prior to Nov. 19, 1936, the plaintiff had been a W.P.A. worker, on and off, for some two years; that he has worked for carnival companies before and since that date, and at the time of the trial was in the military service. His counsel expressly conceded that he suffered no loss of wages or occupation, and it does not appear that he had any business, for injury to which he could recover either general or special damages. The other elements of general damage applicable here were injury to reputation and injury to the feelings or mental suffering caused by the defamatory article. It was

conceded that the Herald had been established for very many years and that it had a daily circulation of between 14,000 and 15,000 of which about 3,500 was in Rutland, and that no other daily paper was published nearer than Burlington and Bennington, 67 miles and 58 miles distant, respectively, from Rutland. Only six persons besides the plaintiff's mother, including her sister-in-law and employers of the plaintiff's parents, were shown to have read the defamatory publication. There was no evidence that it came to the attention of other persons except as that might be inferred from the circulation of the paper and the plaintiff's testimony about the Forkas incident hereinafter referred to.

The direct evidence as to mental suffering comes from the testimony of the plaintiff and his mother. The plaintiff was 23 years old, living with his parents and apparently unmarried. He testified that he learned of the publication of Nov. 19th from his mother while he was in jail and that he ''didn't feel too good about it''; that after he was discharged from jail he heard young Forkas on the street say: ''Hold on to your pocket books, Lancour is loose again''; that there were no other incidents of this kind; that he had been in the habit of going out with boys and having a good time, but these publications had made him feel ''different'' about meeting people as he was afraid the matter would be thrown at his face; that the publications had had an effect on his habit of occasionally calling on girls. On cross examination he admitted that he had heard nothing about the matter recently and that for some time he had been going out as often as before with his boy and girl friends. The plaintiff's mother testified that the six other persons above referred to as having read the article talked to her about it; that she took the paper to the plaintiff in jail the night she got it; that when he read the article he threw the paper down, his head dropped and he talked about the article most of the time for half an hour, and that it ''hurt his feelings very bad.''

As hereinafter appears there was some evidence before the jury from which it would be possible to find that the libel in question was published with actual malice. The jury were instructed, in effect, that such malice, if found, might be used both as a basis for the enhancement of compensatory damages and for

the award of exemplary damages. As the case must go back for a new trial we deem it advisable to consider whether such malice, if found, might properly be considered in this double aspect. Moreover in considering this motion it must be assumed that the evidence before the jury was given the greatest probative force to which it was fairly entitled according to the law of evidence. *Rainey* v. *Grand Tr. Ry. Co.,* 84 Vt. 521, 529, 80 Atl. 723. It follows that it cannot be assumed that such evidence was given a probative force greater than that to which it was fairly entitled under the law of evidence and the substantive law.

It is undoubtedly the general rule that damages may be enhanced or increased because of proof of actual malice on the part of the defendant. 33 Amer. Jur. 271, Sec. 288. As to whether it is compensatory or punitive damages or both that may be thus enhanced there is much diversity and uncertainty in the holdings of the courts of different jurisdictions. In many cases it is held that damages may be so enhanced but with no indication as to the kind of damages referred to. Some of the diversity arises from lack of uniformity of the laws respecting punitive or exemplary damages. For instance, in Massachusetts, where the recovery of vindictive, exemplary or punitive damages has never been permitted (*Ellis* v. *Brockton Pub. Co.,* 198 Mass. 538, 84 N. E. 1018), it has been held that because a libel or slander involves an injury to the feelings of the plaintiff as well as to his reputation, his injury may be greater if the defamatory words are uttered with express malice than if there is only the malice which the law implies from intentionally doing, without justification, that which in its natural tendency is injurious. *Faxon* v. *Jones,* 176 Mass. 206, 57 N. E. 359. A leading case in Connecticut declares that exemplary damages in that state are limited to the expenses of litigation less taxable costs, and that compensatory damages in a defamation case cannot be enhanced by proof of actual malice beyond the actual increase of injury resulting therefrom. *Craney* v. *Donovan,* 92 Conn. 236, 102 Atl. 640, L. R. A. 1918C 96. In Michigan it has been held in effect that the amount of damages to be allowed for shame, mental anxiety, insulted honor, and suffering and indignation may be increased or aggravated by the vindictive feeling, or the degree of malice, recklessness, gross carelessness or negligence of the

defendant, and that this increase must be considered in that state as actual damages, although usually spoken of as exemplary, vindictive or punitory. *Scripps* v. *Reilly,* 38 Mich. 10. The New York Court of Appeals has said in a libel case that unless the judge rules that the occasion is privileged the question of malice is never for the jury when compensatory damages alone are sought. *Corrigan* v. *Bobbs-Merrill Co.,* 228 N. Y. 58, 126 N. E. 260, 10 A. L. R. 662, 667. And in California in actions for civil libel, where the plaintiff seeks to recover punitive or exemplary damages, or where the defendant alleges that the publication was justified on the ground that it was privileged, actual malice or malice in fact becomes an issue. *Scott* v. *Times-Mirror Co.* 181 Cal. 345, 184 Pac. 672, 12 A. L. R. 1007, 1017. In the A. L. I. Restatement of Torts, Sec. 621 c, it is said: ''The motive and purpose of the defendant, his belief or knowledge of the falsity of the publication and the provocation or other occasion afforded him by the plaintiff for the publication of the defamatory publication are not to be considered in determining the general damages to which the plaintiff is entitled, although such factors are important on the question whether the plaintiff is entitled to punitive damages.''

 In Vermont the doctrine of punitive damages is fully recognized and the trend of our decisions seems to accord with the rule as stated in the Restatement. That punitive or exemplary damages may here be awarded in a defamation action is not questioned, and it is equally clear that actual malice may be proved as the basis of such damages. *Smith* v. *Moore,* 74 Vt. 81, 86, 52 Atl. 320; *Kidder* v. *Bacon,* 74 Vt. 263, 274, 52 Atl. 322, 88 Am. Dec. 633.

*Bullock* v. *Cloyes,* 4 Vt. 304, was an action for slander in charging theft. It was held that inasmuch as the defendant was allowed to introduce certain evidence in mitigation of damages the plaintiff should have been allowed to introduce evidence to show malice in the defendant and to enhance damages, but whether compensatory or exemplary damages does not appear.

There is a dictum in *Nott* v. *Stoddard,* 38 Vt. 25, 32, to the effect that evidence of malice is admissible on the question of damages, but whether compensatory or exemplary damages are referred to is not indicated. In *Rea* v. *Harrington,* 58 Vt. 181,

187, 2 Atl. 475, 56 Am. Rep. 561, evidence to show animus was held admissible. The purpose of such showing does not appear although it does appear that exemplary damages were awarded in the trial court. *Knapp* v. *Fuller*, 55 Vt. 311, 45 Am. Rep. 618, *Flint* v. *Holman*, 82 Vt. 297, 73 Atl. 585, and *Cavanaugh* v. *Austin*, 42 Vt. 576, are cases in which animus or malice was permitted to be shown for a purpose not clearly indicated, although in the last named case the implication seems to be that such malice might be considered on the question of damages, without indicating whether compensatory or exemplary damages are meant.

*Hutchinson* v. *Wheeler*, 35 Vt. 330, was an action for slander in charging commission of a criminal offense. The trial court was sustained in admitting evidence tending to show absence of malice on the part of the defendant in mitigation of damages. The kind of damages referred to is not specified in the opinion, but the statement of the case shows that the trial court had charged the jury that this evidence furnished no reason why the plaintiff should not recover all the actual damages he had sustained, but would go in mitigation of exemplary damages. No case is to be found in which this court has held that evidence of malice may properly be received for the purpose of enhancing damages which are stated to be compensatory.

*Devine* v. *Rand*, 38 Vt. 621, was an action in trespass for damages resulting from the defendant's gross abuse and injury of his eleven-year-old foster daughter. In considering the claim for enhanced damages because of the alleged wanton malice or oppressive cruelty of the defendant this Court divides the authorities on that subject into three classes: (1) those that confine recovery to the actual loss or damage suffered, excluding all evidence of the intention, motive or character of the offence; (2) those that deny the right to exemplary damages but permit the recovery of additional damages on the ground that the injury .is greater if the plaintiff is subjected to a wilful and premeditated wrong; and (3) those that insist that the jury may award additional damages by way of smart money. It is then said that it is of very little consequence to the parties in actions *ex delicto* whether such damages are allowed upon the ground that the wickedness and wilfulness of the act aggravates the in-

jury to the plaintiff, or upon the ground that the defendant should be punished in damages. The subject of punitive damages is then discussed and it is clear that the evidence of actual malice is here held to be admissible as a basis for such damages. The inference is plain that compensatory damages could not also be increased by reason of such malice. It seems clear that the conclusion reached is equally applicable to an action for defamation. We conclude that in the present case evidence of actual malice was properly for the consideration of the jury only on the question of exemplary damages.

Plaintiff's exhibits Nos. 2, 3 and 4 were articles published in the defendant's newspaper subsequently to the article of Nov. 19th on which the action was based. They were received in evidence over the defendant's objections and exceptions and were submitted to the jury on the question of malice as bearing on damages. The general rule is well established that for the purpose of showing malice other words published by the defendant, defamatory of the plaintiff, in some cases with certain restrictions, may be shown. As to the admissibility of subsequent statements of similar import for this purpose see annotations in 86 A. L. R. 1298 and in 12 A. L. R. 1029. This Court has held that such publications prior or contemporaneous (*Kidder* v. *Bacon,* 74 Vt. 263, 274, 52 Atl. 322), or subsequent, and even after the action has been commenced, may be shown for this purpose. *Cavanaugh* v. *Austin,* 42 Vt. 576, 579; *Rea* v. *Harrington,* 58 Vt. 181, 187, 2 Atl. 475, 56 Am. Rep. 561; *Knapp* v. *Fuller,* 55 Vt. 311, 314, 45 Am. Rep. 618; *Smith* v. *Moore,* 74 Vt. 81, 86, 52 Atl. 320; *Flint* v. *Holman,* 82 Vt. 297, 300, 73 Atl. 585.

Exhibit No. 2 was published on Nov. 25th after warrant and complaint against this plaintiff had been issued and presumably served. As stated in that article he was then still awaiting arraignment. Exhibit No. 3, published Nov. 26th, states that on the previous day Arthur Lancour was arraigned on a charge of burglary, pleaded not guilty, and that bail was fixed which he was unable to furnish. Both of these articles contain language which repeats, substantially, the charge contained in the article of Nov. 19th which was held to be libelous *per se.* The defendant contends that these articles were privileged because published after judicial proceedings had actually

been commenced. Even so they could at best be only conditionally privileged, and it does not appear that the statements objected to were any part of a fair and accurate account of such proceedings, or that they were at all necessary to make such account understandable. Rather they appear to be mere gratuitous repetitions of the statement contained in the issue of Nov. 19th to the effect that Floyd Lancour was alleged to have charged his brother with the commission of a felony. Furthermore we do not endorse the contention that these statements, even if privileged, would not be admissible to prove malice. We see no reason why such statements should not be as competent evidence of the author's state of mind as statements for which the author might be liable in damages. While the court in New Jersey and possibly in a few other jurisdictions appears to have held *contra,* there is good authority for holding that such statements are admissible, regardless of privilege, for the purpose of showing malice. 1 Wigmore on Evidence, 2nd ed. Sec. 404 (2) says that ''the suggestion that such a (defamatory) utterance when privileged is not thus evidential (on the question of malice) has not been generally accepted and seems unsound.''

Exhibit No. 4, published Dec. 7, 1936, so far as it related to this plaintiff, stated that ''Judge Smith released Arthur Lancour of Rutland from a charge of burglary in the night time. * * * * The judge ruled, after a preliminary hearing at which Chief of Police William P. Fox was the only witness, that there was not sufficient evidence that Lancour entered the building or stole anything of value.'' This seems to be merely a proper statement of what occurred and we are unable to see therein any imputation, as contended by the plaintiff, that he was really guilty. The item was placed at the end of an article relating to a number of cases that had been considered in municipal court, and under two headlines which referred only to one of the other cases. The plaintiff contends that this fact might properly be considered by the jury as some evidence tending to show malice, inasmuch as the defamatory article of Nov. 19th appeared under two large headlines which in effect accused the plaintiff of theft and robbery. Exhibits Nos. 2 and 3 were properly for the consideration of the jury on the question of exemplary damages. Exhibit No. 4 had no substantial probative value for the purpose offered and does not require our consideration.

Aside from the inferences that might be drawn from the original charge of felony and from the exhibits referred to, we find little evidence in the record tending to show actual malice. No personal animosity to, or even personal knowledge of, the plaintiff by any governing officer of the defendant corporation was shown. See *Bishop* v. *Readsboro Chair Co.*, 85 Vt. 141, 156, 81 Atl. 454, 36 L. R. A. (N. S.), 1171, Ann. Cas. 1914 B, 1163. The details of the publication of the articles and securing the data therefor were handled by employes of the defendant, in accordance with its custom, without coming to the attention of William F. Field, its president, chief executive officer and publisher, or, so far as appears, of any other governing officer. If there was negligence in the way these matters were handled it was not shown—unless by inference from the articles themselves —to have been such reckless and wanton disregard of the plaintiff's rights as amounts to actual malice. *Sparrow, Admr.*, v. *Vt. Sav. Bank*, 95 Vt. 29, 33, 112 Atl. 205.

It appeared that it was the usual custom of the defendant, when reporting successive hearings in court proceedings, to report also some of the details of previous hearings. This custom the plaintiff insists is evidence of malice in this case, but it could be argued with at least equal plausibility that the following of the usual custom tended to indicate absence of malice. The plaintiff also contends that Mr. Field was an unwilling witness and showed an "astoundingly cynical callousness" to the wrong done the plaintiff and its effect upon him. No testimony is called to our attention in this connection and we find nothing in the record before us that bears out the claim of cynicism or callousness. The occasional hesitancy and uncertainty displayed by the witness might well be accounted for by a not unnatural difficulty in understanding the exact meaning and scope of questions propounded to him by the examiner. The statement of this witness to the effect that he did not know, prior to the first trial of this case, that the publications in question were not privileged is obviously true, because until the decision of that case in this Court the exact limits of a newspaper's privilege in publishing news of this character had not been determined in this state, and in other jurisdictions there was some authority under which these publications might have been held to be privileged.

■ In those cases where there is no legal measure of damages and they are unliquidated, so that the amount thereof is referred to the judgment and discretion of the jury, the trial court ordinarily will not interfere with their verdict unless it clearly appears that the damages found are excessive or insufficient. Although the verdict may be considerably more or less than, in the judgment of the court, it ought to have been, still it will decline to interfere unless the amount is so great or small as to indicate that it is the result of perverted judgment, accident or gross mistake. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 157, 130 Atl. 758; *Shedrick* v. *Lathrop,* 106 Vt. 311, 317, 172 Atl. 630. But when the verdict is thus excessive or deficient the court will not hesitate to exercise its discretion to interfere. *Woodhouse* v. *Woodhouse, supra.*

■ This is a question concerning which the appellate court on review has no discretion. *Bradley* v. *Blondin* et al. 94 Vt. 243, 257, 110 Atl. 309. The only question here for our determination is whether the trial court abused its discretion. In considering this question we are bound to indulge every reasonable presumption in favor of the ruling below, bearing in mind that the trial court was in the better position to determine the question. *Belock* v. *State Mut. Fire Ins. Co.,* 106 Vt. 435, 443, 175 Atl. 19; *Parizo* v. *Wilson,* 101 Vt. 514, 524, 144 Atl. 856; *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 153, 130 Atl. 758. So considered it cannot be said, on the record before us, that the trial court exercised its discretion on grounds or for reasons clearly untenable, or to an extent clearly unreasonable, which, in this state, is the recognized test of abuse of discretion. *Stone* v. *Briggs,* 112 Vt. 410, 26 Atl. (2d) 828, 831; *Houran, Admr.* v. *Preferred Accid. Ins. Co. of N. Y.,* 109 Vt. 258, 270, 195 Atl. 253; *Temple* v. *Atwood,* 99 Vt. 434, 435, 135 Atl. 591; *Dyer* v. *Lalor,* 94 Vt. 103, 116, 109 Atl. 30.

*Judgment affirmed and cause remanded.*