MINNIE CRAM *v.* JAMES R. MEAGHER.

January Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTÈVANT and
JEFFORDS, JJ.

Opinion filed February 1, 1944.

*Philip M. M. Phelps* for the plaintiff.

*Fenton, Wing & Morse* and *Clayton H. Kinney* for the defendant.

SHERBURNE, J. This is an action to recover damages for personal injuries resulting from an automobile accident. After verdict for the plaintiff the defendant moved to have the verdict set aside upon a number of grounds, one of which was that the verdict was against the evidence, and the court granted the motion, to which the plaintiff excepted.

The plaintiff contends that the court abused its discretion in granting defendant's motion upon the ground that the verdict was against the evidence, and insists that the decision of the court is not borne out by a perusal of the record taken as a whole.

■■ The expression "against the evidence" means the same thing as the expression "against the weight of the evidence", and in this connection the word "against" has the same meaning as the words "contrary to". *Daniels* v. *Preston,* 102 Vt 337, 339, 148 A 285. As said in *Belock* v. *State Mutual Fire Ins. Co.,* 106 Vt 435, 443, 175 A 19, 22, "We will not disturb a ruling by which a verdict has been set aside as contrary to the weight of the evidence, merely because the evidence preponderates in its favor; to justify our interference it must appear that the evidence is so strongly in its favor as to leave no reasonable basis for a contrary verdict. We are bound to indulge every reasonable presumption in favor of the ruling, bearing in mind that the trial court was in the better position to determine the question."

The accident happened on South Main street in the village of Fair Haven. This street is straight and level at the place of the accident and runs generally north and south. Academy street enters it from the west. Just before the accident a truck traveling southerly had stopped on the west side of South Main street just north of Academy street, and another truck was traveling or had stopped on Academy street faced toward, and about to enter, South Main street.

The plaintiff was riding in an automobile with one Hunter. According to the allegations of her complaint and the tendency of her evidence this automobile was traveling northerly on its right side of South Main street, and was driven off the road to avoid a collision with the defendant's car, which was traveling southerly and on its left of the center of the road in passing the truck on the west side of the street, and which later stopped on the west side of the street a short distance south of Academy street. On

the other hand, defendant's evidence tended to show that he was driving his car northerly a considerable distance ahead of the Hunter car, with the intention of turning left into Academy street, and, observing a truck approaching from the opposite direction and not knowing that it was going to stop north of the intersection, he put out his hand and stopped to give the truck time to pass, so that he might enter Academy street without interference, and while he was so stopped the Hunter car ran into the right side of the rear of his car and shoved it forward a car's length and then ran off the road into a telephone pole, and defendant's car remained on the east side of the street opposite the entrance into Academy street, where it stopped after the shove from the rear, until after measurements were made by A. W. Hanson, the local chief of police.

Plaintiff's witnesses to the course of defendant's car were herself, her son and Hunter. She did not note where it stopped after the accident, but the others testified that they did, as did another witness, a photographer, who, one and one-half hours after the accident, saw a Ford coach parked on the west side of South Main street south of Academy street which he believed was the defendant's car. At the time this witness arrived the defendant and A. W. Hanson were present and the latter was taking some measurements. He testified that at that time there was no car parked on the east side of South Main street in the vicinity of the Hunter car. This witness later took some photographs for the plaintiff to be used at the trial. Hunter had an extensive criminal record which he testified about in considerable detail.

Defendant's witnesses as to the course of his car were himself and the drivers of the two trucks, who were in a position to observe the courses traveled by the two cars. Hanson arrived about one hour after the accident and made some measurements. The two truck drivers remained until after these measurements were made. They all noted a mark on the right hand end of the rear bumper of defendant's car and that the right rear fender was pushed in or dented.

The testimony as to the direction defendant's car was traveling cannot be reconciled upon any theory that all the witnesses were attempting to tell the truth. It is unnecessary to comment upon Hunter's credibility. While the plaintiff had only one witness,

the photographer, who can be said to be disinterested, the defendant had three disinterested witnesses. The truck drivers were strangers in that locality and had no apparent motive to shade their testimony, and Hanson was a public officer who had been requested by telephone from a representative of the State motor vehicle department at Rutland to investigate the accident. He made an excellent sketch showing the locations of the two cars after the accident. The marks upon the rear of defendant's automobile were corroborative of defendant's witnesses. If they were caused by the accident they could hardly have been made if the defendant had been traveling southerly.

Enough appears so that we cannot say that the trial court abused its discretion in setting the verdict aside.

*The judgment setting aside the verdict is affirmed, and cause remanded.*